**Angel Luis SANTA, Ana Luisa Santa, and Sonia Santa, minors represented herein by their mother with patria potestas Filomena Aponte, and Filomena Aponte pro se, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 239–63.**

United States District Court
D. Puerto Rico.

April 14, 1966.

Francisco Fernández-Cuyar and Manuel Orraca-Torres, San Juan, P. R., for plaintiffs.

Francisco A. Gil, Jr., U. S. Atty., and Gilberto Gierbolini, Asst. U. S. Atty., San Juan, P. R., for defendant.

RUIZ-NAZARIO, Chief Judge.

This is an action brought by the widow and the minor children of veteran Angel Luis Santa Fuentes against the United States of America claiming compensation under the Federal Tort Claims Act (28 U.S.C.A. §§ 1346(b) and 2671 et seq.) for damages allegedly suffered by said plaintiffs on account of the wrongful death of the veteran allegedly caused by the negligence of the defendant, its employees, agents, and other personnel entrusted with the management and operation of its San Patricio Veterans Hospital, located in San Juan, Puerto Rico.

The defendant in its original answer, filed October 25, 1963, denied practically all of the allegations of the complaint herein, except that the Department of Health, Education, and Welfare, is an agency of the Government of the United States under whose jurisdiction the San Patricio Veterans Hospital is operated; that Angel Luis Santa Fuentes was a World War II veteran of the United States of America, and that he requested services at the San Patricio Veterans Hospital on February 2, 1962. The original answer also contained two affirmative defenses, to wit:

(1) That the complaint fails to state a claim upon which relief can be granted.

(2) That the death of Santa Fuentes occurred without any intervening (sic) negligence on the part of the defendant, United States of America.

On January 15, 1964, the defendant moved for leave to file an amended answer and tendered the same. It was permitted to file the tendered amended answer at a hearing held on January 24, 1964, no objection having been made to this amendment by plaintiffs' counsel. Leave to file the amended answer was granted by order of January 24, 1964.

This amended answer is literally identical with the original answer, except that it added two additional affirmative defenses, reading as follows:

"Third Defense: The defendant affirmatively alleges that the actions of

the Veterans Administration doctors in deciding to transfer the veteran Angel Santa Fuentes to the State Psychiatric Hospital came as a result of an act or omission of employees of the government exercising due care in the execution of a statute or regulation and, as such, such actions fall within the statutory exception set forth in 28 U.S.C.A. 2680(a)."

"Fourth Defense: The transfer of the Veteran Angel Santa Fuentes to the State Psychiatric Hospital can be equated with the refusal of the Government to admit to the Veterans Administration Hospital, and, as such, this action falls within the discretionary function exception of 28 U.S.C.A. 2680(a)."

On December 10, 1964, the trial in the action was set for March 26, 1965.

On March 19, 1965, the Court, on its own motion, reset said trial for March 29, 1965.

On March 26, 1965, the defendant filed a motion to vacate the trial setting, and another motion to bring in third party defendants. Plaintiffs, on the same date, filed objections to defendant's said motions. On March 29, 1965, the Court heard argument on the motions, and both were denied, and defendant was not permitted to file a tendered third-party complaint.

The trial of the action then commenced on said date, continuing on March 30, 31, and April 1, 1965. Oral testimony and documentary evidence were adduced, and the action was taken under advisement. Defendant was granted a period of 30 days to file a memorandum and plaintiffs were granted a period of 15 days thereafter to reply.

A complete transcript of the evidence was prepared and filed by the reporter, counsel have submitted their respective memoranda, and the Court is now duly advised in the premises.

The only question at issue under the third and fourth affirmative defenses raised in defendant's amended answer and the memoranda filed by the United States Attorney is whether the evidence supports a conclusion to the effect that the acts and/or omissions of the agents and employees of the defendant Government towards the veteran Angel Luis Santa Fuentes were based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency for which they worked, or a discretionary function or duty on the part of said employees, falling within the exception contained in 28 U.S.C.A. § 2680(a); and, further, whether Santa Fuentes' transfer to the State Psychiatric Hospital, under the conditions and circumstances shown by the evidence herein, can be equated with a refusal of the Government to admit Santa Fuentes to the Veterans Administration Hospital so as to bring this action within the purview of the discretionary exception of 28 U.S.C.A. § 2680(a).

■■■ The evidence unquestionably fails to support any such conclusion.

The cases cited by counsel for the government dealt with factual situations inapposite to the factual situation which the preponderance of the evidence establishes as having existed herein.

This is not a case where a single error of diagnosis on a refusal to grant admission at the government's hospital was all that occurred, nor is it a case where an error of diagnosis upon admission and the consequent medically erroneous mistakes after admission derived from said erroneous diagnosis were the cause of the damage.

Here, the veteran upon coming to the hospital between 4 and 4:30 P.M. on February 9, 1962 and applying for admission had evident symptoms of a serious heart condition. He was then admitted to the hospital, certain laboratory and other tests were ordered made, he was ordered to change his clothing to hospital pajamas and was assigned to a ward. A receipt for his clothes was delivered to his wife, and she was told she could leave because he was being hospitalized. This she did accompanied by the persons who had brought her and her husband to the hospital. About four hours later, in the absence of his wife

or any other relative, or any consent of the former, and while still suffering from the heart attack, he was summarily discharged and sent to the Psychiatric Hospital of the Commonwealth of Puerto Rico, without any medical care or supervision whatsoever during such transportation. Upon the refusal of the doctor in charge of the latter hospital to admit him there, he was left alone in one of the halls of this hospital by the employee of defendant who had taken him there. This employee then left the Psychiatric Hospital to go to the San Patricio Veterans Hospital, allegedly to contact the veteran's relatives and request that they go to the Psychiatric Hospital to pick up and transport the veteran to the Río Piedras General Hospital. It was not until after midnight that, Santa's relatives could be contacted and were able to come to the Psychiatric Hospital for that purpose. The veteran was then in a state of prostration. He was picked up and transported in a passenger car without any medical care or supervision and upon arrival at the Río Piedras General Hospital, was pronounced dead. An autopsy revealed that his death was due to a myocardial infarct.

The almost unanimous medical testimony in this action was to the effect that a person suspected of suffering from a myocardial infarct must be immediately put to bed rest, and that the veteran upon being admitted to San Patricio Veterans Hospital should have been put to bed rest and not permitted to move until his heart condition sufficiently improved; that sending him in a passenger car from hospital to hospital was very dangerous and placed him in a very serious risk of death. The action of the employees and agents of the defendant under the above circumstances was grossly negligent.

Title 28, U.S.C.A. § 2674 provides that the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.

This section has been construed to mean "that the standards and tests of local law are to determine whether a negligent or wrongful act has been established."

See: State of Maryland to Use of Burkhardt v. United States (4 Cir. 1947), 165 F.2d 869, at p. 871 and American Exchange Bank of Madison, Wis. v. United States (7 Cir. 1958), 257 F.2d 938.

In Puerto Rico "an action to exact professional liability is not different from an ordinary case of damages for negligence." See: Saez v. Municipality of Ponce, 84 P.R.R. 515, at p. 522.

An action like the present one, under the Federal Tort Claims Act lies in this court. See: Santana v. United States (1 Cir. 1949), 175 F.2d 320.

As regards the alleged discretion in medical matters, the law does not appear to favor the defendant under circumstances similar and still less meritorious than these prevailing here. See: Kolesar v. United States (D.C.S.D. Florida 1961), 198 F.Supp. 517 at pages 519, 521. White v. United States (4 Cir. 1963), 317 F.2d 13 at pages 17 and 18.

After the above remarks, the Court hereby makes the following:

## FINDINGS OF FACT

1. The plaintiff, Filomena Aponte, is the legitimate mother, with patria potestas, of her minor children, the co-plaintiffs, Angel Luis Santa, Ana Luisa Santa, and Sonia Santa, who at the time of the filing of the complaint herein were of the ages 12, 9, and 7 years, respectively, and she is also the lawful widow of veteran, Angel Santa Fuentes, the legitimate father of the above named children co-plaintiffs who died on February 9–10, 1962 and was 34 years old at the time of his death.

2. The Department of Health, Education, and Welfare was, at all times mentioned in these Findings, and still is, an agency of the defendant government of the United States of America under

whose jurisdiction it operates the San Patricio Veterans Hospital, located in San Juan, Puerto Rico. Said hospital is managed by the United States Veterans Administration.

3. Angel Luis Santa Fuentes was, at all times mentioned in these Findings, a World War II veteran of the United States of America, entitled to receive medical care and attention from said Agency and hospital. The defendant, United States of America, owns, controls, manages, and operates said Hospital through the aforesaid agencies.

4. On February 9, 1962, around four or four-thirty in the afternoon, the veteran Angel Santa Fuentes suffered a heart attack and was taken by his wife, the plaintiff herein, Filomena Aponte, to the above mentioned San Patricio Veterans Hospital for hospitalization and medical treatment. Shortly after his arrival there, he was in great pain, complaining of severe pain, very asthmatic, short of breath, sweating profusely, and having chills. Then at his wife's request, he was examined by the admitting physician of said hospital who, acting within the scope of his employment, ordered some tests made at the hospital laboratory and undertook to treat and care for him and diagnose his malady. The veteran was admitted for hospitalization and treatment and was assigned to a hospital ward and given hospital clothing (pajamas). His own clothes were kept by the hospital, put away in a closet, and a receipt therefor signed by the wife's nephew, was delivered to the wife. (See the Hospital Effects Slip—Exh. 6 Pl.). His wife was requested to sign blank forms. A hasty and most incorrect diagnosis of his condition and illness as a "convulsive disorder and impending delirium tremens" was contemporaneously made by the admitting physician, even though the patient's symptoms at that time, according to the consensus of medical opinion introduced at the trial, were indicative of a serious heart condition.

His wife was told by the nurse that she could go home, that he had been already admitted, and that she was to bring some slippers and a toothbrush to the patient. The wife then left for her home in the Turabo Ward of the Municipality of Caguas, Puerto Rico.

5. Between 8 and 8:30 of that same night, about four hours after the veteran's admission at the San Patricio Veterans Hospital and under pretext that the veteran, on being again examined by the admitting physician, was found to be "talking very loudly" although "he was not agitated then as when the admitting physician had seen him initially", said admitting physician, without consultation with any cardiologist or further consultation with any other physician, and without any previous notice to the veteran's wife, nor her consent therefor, discharged said veteran from the San Patricio Veterans Hospital and sent him over to the State Psychiatric Hospital in Río Piedras, Puerto Rico. No other doctor had seen him since his admission at the San Patricio Veterans Hospital between 4 and 4:30 P.M., and no treatment whatsoever for his malady had been given to him until said discharge.

The veteran was taken from one hospital to the other by one Serafin Jovet, who was then a general employee of the San Patricio Veterans Hospital; he was not a doctor, nor a male nurse. He took the patient in his private car, a Falcon 1961, he was not accompanied by any doctor or nurse and had no professional assistance whatsoever; was accompanied by a friend, not in the employment of the defendant. The veteran walked alone down the stairs of the San Patricio Veterans Hospital, sat in the front seat of Jovet's car between the latter, who was driving, and Jovet's friend. The veteran did not complain of anything during the trip, was not boisterous, violent, or agitated in any form or manner whatsoever; he did not at any time, while in the car, put up any fight or resist any suggestions from Jovet; all that he said was to ask for a cigarette, which was given to him. When they arrived at the Psychiatric Hospital, he left the car and walked into the hospital without any physical help whatsoever. All this time,

according to the weight of the medical testimony, he was under the same heart attack, from which he was suffering when admitted at San Patricio Veterans Hospital.

6. Upon arriving at the State Psychiatric Hospital at Río Piedras, around 8:30 P.M. of the same night, Jovet, the defendant's employee, who had brought the veteran from San Patricio Veterans Hospital, delivered a card (Exh. 7 Pl.) to Dr. José Ernesto Viñas Matienzo, the resident psychiatrist of the State Psychiatric Hospital. After reading said card, Dr. Viñas Matienzo told Jovet that "it was not possible to admit that man, because the diagnosis is a General Hospital disease, that can't be treated at a psychiatrist hospital, that is, D.T.'s, and, besides, that there were no relatives" and added "if he (Jovet) realized the danger he had exposed himself to by bringing that sick man in his car." The veteran then had a low blood pressure, was sweating and had dyspnea (short breath), difficulty in breathing. He was cold, had a kind of grayish color, cyanotic color, pale. His blood pressure was 80 over 60. He was very sick, seriously ill. The doctor told Jovet to take the veteran back to San Patricio Veterans Hospital, but Jovet did not do that but chose to make a call to the latter and also to call the Caguas Police to locate the veteran's relatives and tell them to come up to the State Psychiatric Hospital and pick up the veteran and take him to a General Hospital. Jovet then left for San Patricio Veterans Hospital to receive instructions from his superiors and came back later. He left the veteran in a hallway of the State Psychiatric Hospital without leaving any doctor, nurse, or any other person in charge of him. Dr. Viñas Matienzo notified the police. Judging, however, that the patient urgently needed some medication, he gave him a shot of ½ ampule of caffeine, 250 millimeters, which was the only thing they had available at his hospital. He gave it as a tonic to the heart to combat the shock which the veteran was in. He finally called the San Patricio Veterans Hospital and talked with a nurse, with a person from the Administration, and with the physician who had sent the veteran over. He told the latter that the patient was not under his (Viñas') jurisdiction but under theirs.

7. Around 12 or 12:15, that same night, the veteran was picked up by his relatives at the State Psychiatric Hospital to be taken to the Río Piedras General Hospital upon instructions forwarded to them by the staff of San Patricio Veterans Hospital through the Caguas Police Station. He was taken in Américo Martínez's car, with his wife and the other persons who had accompanied her. When he was so picked up, he had a great shortness of breath, attempted to groan, but could not, had no strength therefor. They left for the Río Piedras General Hospital. When they arrived at that hospital, the veteran was dead.

8. From the autopsy performed by Dr. Rafael Criado Amunategui on February 10, 1962, it was determined and concluded that the cause of the death of veteran Angel Luis Santa Fuentes "was a recent infarct of the myocardia, due to coronary thrombosis, also recent." The heart attack, which caused Santa's death, must have had a duration, more or less, of from five to ten hours.

9. The acts and omissions of the officers, agents, and employees of the defendant United States of America charged with the administration, management, and control of its San Patricio Veterans Hospital and while in the performance of their duties as such and within the scope of their employments were the proximate, efficient, and precipitating cause of the death of veteran Angel Luis Santa Fuentes and of all the damages suffered by the plaintiffs herein.

10. The deceased veteran was legally married to plaintiff Filomena Aponte and, co-plaintiffs Angel Luis, Ana Luisa, and Sonia Santa are the three legitimate children born of said union. They are the sole and universal heirs of the deceased. All of them were fully dependent for their support on the earnings of

said veteran who used to give them $20.00 to $25.00 per week when he was working on the mainland. When he no longer worked on the mainland he gave his wife for her support and that of the children not less than $15.00 per week when he was working. He used to work for Julio Roldán roasting pigs and made from $20.00 to $25.00 per week. His health was fairly good, although he had a defect in his ear which he brought from the Korean War. Santa was of a ruddy complexion, around 5 ft. 10 inches tall; physically strong, 34 years old at the time of his death. He was a good father to his children.

During the year immediately preceding his death, Santa used to indulge in drinking sprees.

11. On the basis of his earnings, his contributions to the support of his wife and children, his life expectancy, and the other rules and factors to be taken in consideration for determining the pecuniary loss suffered by the plaintiffs on account of Santa's death, I find that the sum of $12,000.00 reasonably reflects such pecuniary loss.

■ 12. Each of the individual plaintiffs herein has under the laws of the Commonwealth of Puerto Rico a claim for relief for mental anguish, independent of the pecuniary loss he may have sustained. (See: Commercial Union Ins. Co. v. González Rivera, et al., 1 Cir., 358 F.2d 480, at page 483 decided March 25, 1966). Although it is difficult to assess damages for mental anguish, plaintiff Filomena Aponte, Santa's widow, experienced great suffering with the ordeal she underwent in taking her husband to San Patricio, striving for his admission there and five or six hours later being called by the police to come to another hospital from where she had to take him, in a state of shock, resting in her lap, to still another hospital to find that it was too late, because he had died on the way to the latter hospital. Her anguish is aggravated by the thought of her children being left fatherless. This mental anguish the Court finds must have a reasonable compensation of $4,000.00. The Court further finds that each of the three children, the individual plaintiffs, Angel Luis, Ana Luisa, and Sonia Santa are also entitled to damages for mental anguish which the Court reasonably assesses in the amount of $2,000.00 each.

■ 13. Filomena Aponte, the widow, is also entitled to damages for loss of companionship, society, and consortium. Considering her age, her dependence upon the deceased, the loneliness she must face as her children grow older and marry, the Court assesses damages for this item in the amount of $8,000.00.

■ 14. The minor plaintiffs were also dependent upon Angel Santa Fuentes for tutelage and guidance. There is not much evidence to indicate how he raised them as regards religion, and other virtues, or how far he went to keep them in school, and enable them to have a higher education. I therefore, find that a reasonable compensation for the loss of the limited tutelage and guidance he could have given them is the sum of $1,000.00 to each.

■ 15. Under the law of the Commonwealth, the minor plaintiffs are also entitled to recover, as lawful heirs of the decedent, for all conscious pain and suffering of the decedent. The deceased, after stricken with his heart attack, suffered 8 hours of severe pain and anxiety with the realization that he was being taken from one place to another, without any effective treatment being given to him and with the fear that he was being thrown to the grave without a conscientious fight. For these damages to the decedent, the Court awards the three minor children and lawful heirs of the deceased, the plaintiffs, Angel Luis, Ana Luisa, and Sonia Santa, the sum of $3,000.00 to be divided equally among the three.

■ 16. The Court finds that of the $12,000.00 pecuniary loss heretofore determined in Finding 11, the plaintiff, Filomena Aponte, is entitled to $6,000.00, and the other three plaintiffs, Angel

Luis, Ana Luisa, and Sonia Santa, are each entitled to $2,000.00.

■ 17. The plaintiffs have also sought damages for attorney's fees. If a private party were the defendant herein, the argument might be valid on the basis of the losing party's obstinacy under the local substantive law. However, in view of the prohibition of 28 U.S.C.A. § 2412(c), the Court finds that plaintiffs are not entitled to attorney's fees.

18. To recapitulate damages, the Court finds that the respective plaintiffs are entitled to the following amounts:

|     |                            |             |
| --- | -------------------------- | ----------- |
| (a) | Plaintiff Filomena Aponte  | $18,000.00  |
| (b) | Plaintiff Angel Luis Santa | 6,000.00    |
| (c) | Plaintiff Ana Luisa Santa  | 6,000.00    |
| (d) | Plaintiff Sonia Santa      | 6,000.00    |
|     | TOTAL                      | $36,000.00  |

From the above Findings, the Court arrives at the following:

## CONCLUSIONS OF LAW

I. This Court has jurisdiction of the parties and subject matter of this action pursuant to Title 28 U.S.C.A. §§ 1346(b) and 2671 et seq.

II. The liability of the defendant, United States of America, must be determined and is hereby determined, as if it were a private person under the law of the Commonwealth of Puerto Rico. (28 U.S.C.A. §§ 1346(b) and 2674).

III. The defendant is liable for all damages caused by its employees, agents, and servants in the scope of their employments.

IV. The fault and negligence of the doctors, agents, and employees of the defendant in charge of admissions, hospitalization, and treatment of veteran patients at the San Patricio Veterans Hospital, managed by the United States Veterans Administration for the Department of Health, Education, and Welfare, an agency of the defendant, United States of America, proximately caused the damages suffered by the plaintiffs herein.

V. Under the law of the Commonwealth of Puerto Rico, a person, who by an act or omission causes damage to another through fault or negligence, shall be obliged to repair the damage so done. 31 L.P.R.A. § 5141.

VI. The decedent, Angel Santa Fuentes, was not concurrently negligent.

■ VII. In actions for wrongful death, damages are recoverable for pecuniary loss, loss of society, and companionship, loss of services, and mental or moral suffering. See: Commercial Union Insurance Co. v. González Rivera, et al., supra.

VIII. The issue of whether the heirs are entitled to recover damages for the conscious pain and suffering of the decedent during his lifetime has been decided by this Court, favorably to said rights in Gallart-Mendía ex rel. Rosa-Rivera v. United States, D.C., 229 F. Supp. 284, Conclusion No. 8, at pp. 287–288.

The opinion of the Court of Appeals for the First Circuit in Compañía Trasatlántica et al. v. Meléndez Torres et al., 358 F.2d 209, decided on March 25, 1966, appears to support my views on said issue.

■ The decedent, had he lived, would have been able to sue for such damages and, if after instituting suit, he later died, his heirs would then have a right to be substituted in his stead. Puerto Rico Railway Light & Power Co. v. District Court (1928) 38 P.R.R. 305.

Although the Supreme Court of the Commonwealth of Puerto Rico has never specifically decided this (Hernández v. Fournier (1957) 80 P.R.R. 94; Travieso

v. Del Toro (1953) 74 P.R.R. 940) it is believed that it would be of the same opinion, when squarely faced with the problem.

IX. Although under Title 28, Sec. 2412(c) the plaintiffs are entitled to costs, such costs, however, not to include attorney's fees, nevertheless under Title 28, Sec. 2678, twenty percent (20%) of the award made to the plaintiffs herein is to be paid out of, but not in addition to the amount of the judgment, to the attorneys representing the claimants.

X. Judgment shall be entered in favor of the plaintiffs for the respective amounts hereinabove set forth.