**BANCO POPULAR de PUERTO RICO,**
Defendant, Appellant,

v.

**Juan Elias DELIZ, a/k/a John Donald Deliz, Plaintiff, Appellee.**

**Jose M. MEDINA et al., Defendants, Appellants,**

v.

**Juan Elias DELIZ, a/k/a John Donald Deliz, Plaintiff, Appellee.**

**Nos. 7030, 7031.**

United States Court of Appeals
First Circuit.

March 13, 1969.

Vicente Zayas Puig, with whom Alberto Pico, Francisco Ponsa Feliu and Baragano, Trias, Saldana & Francis, San Juan, P. R., were on brief, for appellant in No. 7030.

Alberto Pico, with whom Vicente Zayas Puig, Francisco Ponsa Feliu and Baragano, Trias, Saldana & Francis, San Juan, P. R., were on brief, for appellants in No. 7031.

Stanley L. Feldstein, with whom Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

These are joint appeals by defendants in an action brought in the district court for the District of Puerto Rico by Juan Elias Deliz, the son and sole heir of Juan Elias Deliz Gonzales, hereinafter the decedent, against decedent's sister and her husband, Jose M. Medina, citizens of Puerto Rico, and Banco Popular de Puerto Rico. Plaintiff is a citizen of Texas, and the jurisdictional requirements were met. Plaintiff claims that his aunt, with the cooperation of the bank, converted decedent's two savings accounts, in the total amount of $17,359, while he was mortally ill in the hospital. The jury found for the plaintiff in the amount of $3,542. The court set the verdict aside and ordered judgment for the plaintiff for $11,829, or, in the alternative, ordered a new trial on damages. Defendants appeal.

The evidence might be interesting in full detail were we writing a novel, but as a court matter much may be omitted. Using withdrawal orders decedent had signed, the defendant sister transferred his funds in New York into an account standing in her name in the Banco Popular.[1] She allegedly then expended $5,530 to decedent's purposes, including $2,250 given to the plaintiff, and later allegedly gave $12,000 in $100 bills to decedent in the hospital, shortly before he and a lady who had long been his mistress, one Hortensia de Blanck, returned to New York. The sister, accordingly, claimed she had accounted in full.

The testimony as to the $5,530 was not disputed. With two alternatives open to it, to find for the plaintiff for $11,829, being $17,359 less $5,530, or, on the testimony that the sister had returned the entire balance, to find for the defendants, the jury made an intermediate finding which could not be justified on the evidence. Concluding this was an impermissible compromise, the court set the verdict aside. Its further orders were based upon its determination that the $12,000 payment testimony was unbelievably "fantastic" as a whole, or, alternatively, did not amount to a proper delivery. In addition, the court awarded counsel fees for obstinacy.

■ We need not consider to what extent, if any, a court in a case tried to a jury may order judgment in disregard of the specific factual testimony of three alleged eye-witnesses by finding it to be "fantastic." We are not persuaded in this case that it was fantastic, nor that, if true, it could not constitute delivery. As to the latter, no testimony reflected upon decedent's mental abilities. If he wanted to take back $12,000 in cash, that was his affair. With respect to the supposed fantasy of giving $12,000 in cash to a dying man (who was well enough to travel from Puerto Rico to New York, and who lived three more weeks), decedent knew he was dying and that he was going back to New York with a lady who had long been his mistress. He might well want the money for his immediate bills, with the balance for her. The fact that Hortensia testified that "of course" she knew nothing of the money did not mean that the sister was the storyteller. With a litigious son around, Hortensia could be thought to have a strong motive for concealment. Defendants presented enough evidence to entitle them to a jury's resolution of their claims. Roche v. New Hampshire Nat. Bank, 1 Cir., 1951, 192 F.2d 203. See Rainey v. Gay's Express, Inc., 1 Cir., 1960, 275 F.2d 450. Ordering judgment for the plaintiff for $11,832 was error.

■ The ordering of a new trial, on the other hand, in the light of the inexplicable amount of the verdict, was not an abuse of the court's discretion.[2] Na-

1. The sister was not permitted to testify what decedent's instructions had been. How the district court, which excluded this evidence, considered the instructions to be "hearsay" we cannot imagine.

2. The defendants claim that the jury could have reached its result by accepting some of the $5,530 figure and rejecting the rest. The various items making up the $5,530 were set forth in an exhibit. Giv-

tional Fire Ins. Co. v. Great Lakes Warehouse Corp., 7 Cir., 1958, 261 F.2d 35; Schuerholz v. Roach, 4 Cir., 1932, 58 F. 2d 32, cert. denied 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541. Whether the new trial be on damages only, or on liability, is one and the same, so far as the defendant sister is concerned, because she admitted the original obligation and claimed payment. However, with respect to the bank, if the deposit was in. the sister's name with the consent of the decedent, the bank would not be liable even though she failed to account. The court's exclusion of decedent's instructions was error. See, e. g., Ward v. United States, 5 Cir., 1962, 296 F.2d 898, 903; Young v. State Farm Mut. Auto. Ins. Co., 4 Cir., 1957, 244 F.2d 333, 337; 6 J. Wigmore, Evidence § 1770, at 185 (3d ed. 1940). It is true that the bank made no offer of proof. We overlook this because the proffered witness was not the bank's witness. The bank is entitled to a new trial on liability.

 While the matter is now mooted, we are sufficiently disturbed about counsel fees for obstinacy (32 L.P.R.A. App. II R. 44.4(d)) to comment thereon. There is a tendency on the part of successful counsel to feel that they prevailed because of their astuteness, and at the same time to consider that opposing counsel were obstreperous and "obstinate" in having opposed them. This latter thought may predominate when the question of counsel fees for obstinacy arises. Our own view is that usually parties and counsel on both sides may be considered less than fully cooperative, and that it is the exception when counsel fees should be awarded. The present case is an example. Plaintiff's counsel informed the court—a visiting court not acquainted with the Puerto Rico practice —that plaintiff should recover "20 to 30 percent in the matter litigated." Counsel neglected to point out that in the complaint plaintiff sought $17,362, without

credit for $2,250 for which he had given a receipt. During the trial the defendant sister also sought credit for an additional $3,280 for which plaintiff makes no criticism. In awarding counsel fees the court stated it felt "25 per cent of the total sum" was fair. But by this it meant 25 percent of $17,359, for it awarded $4,339.

When defendants complained in this court that $4,339 was 37 percent of the recovery, plaintiff expostulated, "[Defendants'] allegation is supported by a mathematical process of reducing the award to various percentages (an operation never undertaken by the court below) of the judgment and eventually concluding that the award represents 37% of the total amount granted in damages." These remarks are apparently meant to be critical of the defendants. Plaintiff forgets that he was the one who started talking in terms of percentages—and over a claim exaggerated by an admitted $2,250 plus, as he now emphasizes in another connection, an "uncontradicted" $3,280. This meant that plaintiff claimed 31 percent more than he was entitled to. Now plaintiff, having asked for and received a percentage of an admittedly excessive claim, complains when defendants seek to examine it realistically.

When the issue is damages and a plaintiff wants to claim obstinacy, it behooves him not to ask too much. Plaintiff's apparent thought that the district court's discretion is virtually unlimited reads too much into Pan American World Airways, Inc. v. Ramos, 1 Cir., 1966, 357 F. 2d 341.[3]

The error was more substantial than this. One of the defendants is a bank, a possible wrongdoer, but with no personal interest. Funds concededly belonging to the decedent were allowed by the bank to be deposited in the name of the sister, and by her withdrawn. Even if this was contrary to the decedent's original in-

---

en the plaintiff's acknowledged receipt of $2,250, no selection could be made which would justify the jury's figure.

**3.** In all fairness to plaintiff's counsel we do not suggest that his approach is unique.

We are spending the time on this matter for the very reason that we think what occurred in this case was not unique, and we feel it should be corrected.

structions to his sister, which we cannot know, at least to the extent that the sister thereafter properly applied the funds the bank was not liable. The sister claimed that she properly applied them all. The plaintiff, admittedly incorrectly, filed a complaint in which he alleged she properly applied none. It could not be obstinate for the bank to await a settlement of the differences between the main parties, a dispute to which the bank could contribute no information.

The order setting aside the verdict of the jury is affirmed. The other actions of the district court are vacated and the cause is remanded for a new trial.