Edith BONN, etc., et al., Plaintiffs-Appellants, Cross-Appellees,

v.

PUERTO RICO INTERNATIONAL AIRLINES, INC., et al., and United States of America, Defendants-Appellees, Cross-Appellants.

Nos. 74–1120 to 74–1122.

United States Court of Appeals, First Circuit.

Argued Feb. 7, 1975.

Decided June 12, 1975.

Ronald R. Glancz, Atty., Dept. of Justice, Civ.Div., Appellate Section, Dept. of Justice, with whom Carla A. Hills, Asst. Atty. Gen., and Julio Morales-Sanchez, U. S. Atty., were on brief, for the United States and others.

Harry Anduze Montano, San Juan, P. R., with whom Rieckehoff, Calderon, Rosa-Silva & Vargas, Hato Rey, P. R., was on brief, for Great American Ins. Co.

Ricardo L. Rodriguez Padilla, San Juan, P. R., with whom Charles De Mier Le Blanc and Gonzales & Rodriguez, San Juan, P. R., were on brief, for Gregory Kirchoff and others.

Before COFFIN, *Chief Judge,* McENTEE and CAMPBELL, *Circuit Judges.*

PER CURIAM.

Plaintiffs commenced these wrongful death and survival actions to recover damages arising out of the deaths of Frank and Helen Kirchoff (both 51 years old), who were killed on March 5, 1969, while passengers in an airplane which crashed in the El Junque mountain range in the vicinity of San Juan, Puerto Rico, enroute from St. Thomas to San Juan. Plaintiffs are the administratrix of the decedents' estates and their three children, Gregory (Frank's son by a previous marriage), Craig, and Eric, who at the time of their parents' death were 21, 9 and 7 years of age respectively. The defendants are Puerto Rico International Airlines, Inc. (herein Prinair), a Puerto Rican corporation, which was the owner and operator of the aircraft, and the

United States of America, which operated air traffic control facilities in San Juan. The decedents were both residents of the Virgin Islands, as are their children and administratrix. Jurisdiction over the private defendants was founded upon diversity of citizenship, 28 U.S.C. § 1332, and over the United States upon the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

The trial was limited to the issue of damages, pursuant to an admission of liability by the parties, after which a joint judgment was to be entered against Great. American Insurance Company (the airline's insurer) and the United States. The case was tried to a jury, which returned the following special verdict against the defendants:

| | |
|---|---|
| Beneficiaries' Pain and Suffering and Mental Anguish | $1,045,000 |
| Economic Loss | 304,605 |
| Decedents' Conscious Pain and Suffering, Including Fear of Impending Death | 36,000 |
| TOTAL | $1,385,605 |

Defendants both filed motions for a mistrial, judgment notwithstanding the verdict, new trial and remittitur. On January 31, 1974, the district court entered judgments on the verdict against both defendants, except for a remittitur of $26,000 with respect to plaintiffs' damages for decedents' conscious pain and suffering. The defendants United States and Prinair, through its insurer Great American Insurance Company, have appealed on the ground that the jury's award for the beneficiaries' pain and suffering and mental anguish was erroneous and excessive. Plaintiffs have appealed the remittitur part of the district court's order, and also the denial of attorneys fees and pre-judgment interest.

Defendants first contend that the court should have applied the law of the Virgin Islands, 1A Virgin Islands Code ch. 5, § 76, limiting wrongful death recovery to pecuniary loss, see *Williams v. Dowling,* 318 F.2d 642 (3d Cir. 1963), rather than the law of Puerto Rico which permits an award for beneficiaries' pain and suffering, *Commercial Union Ins. Co.* v. *Gonzalez Rivera,* 358 F.2d 480, 482–83 (1st Cir. 1966). Choice of law in Federal Tort Claims actions is governed by the conflicts principles of the jurisdiction where the tortious act occurred. 28 U.S.C. § 1346(b) (1970); *Richards* v. *United States,* 369 U.S. 1, 10–15, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Choice of law in diversity actions is determined by the conflicts principles of the forum. *Klaxon Co.* v. *Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus the conflicts law of Puerto Rico is controlling.

In *Fornaris* v. *American Surety Co.,* 93 P.R.R. 28, 47 (1966), an airplane owned by a Puerto Rico corporation and carrying Puerto Rico residents left Puerto Rico and crashed in the Virgin Islands, killing all the passengers. The Supreme Court of Puerto Rico adopted the principle that rights and liabilities in tort are to be determined in accordance with the law of the jurisdiction having the dominant contacts with the parties and the occurrence, see Restatement (Second) of Conflict of Laws §§ 145, 175, determined that Puerto Rico was the appropriate jurisdiction and applied its unlimited measure of damages in a suit by decedents' relatives. *Fornaris,* where the parties shared a common domicile and the place of accident was fortuitous, is the situation described in Restatement, *supra* § 171, comment b as an exception to the usual principle, see § 175, Reporter's Note at 525, that place of conduct and injury are the predominant contacts.

Here, the conduct and the injury occurred in Puerto Rico and there was no common domicile. The Virgin Islands has the most readily apparent interest in the narrow issue as to which the conflicts problem has arisen—namely, the proper measure of recovery for Virgin Islands next of kin whose parents, also Virgin Islanders, were killed. But Puerto Rico does have an interest in the outcome which counterbalances that of the Virgin Islands. The airline defendant is

a Puerto Rico corporation. Puerto Rico has an interest in defendant, a citizen of Puerto Rico and a local taxpayer, business, and employer, just as the Virgin Islands has an interest in plaintiffs, its citizens and potential wards.

■ In the present case it appears to us that the process of balancing contacts results either in a stand-off or a slight tilt toward Puerto Rico. In either event the residual traditional factors of the place of conduct and the place of injury would seem to us determinative. The Virgin Island's major interest in limiting recovery is to protect its domiciliaries who might be defendants, or its courts. Neither are involved here. It would not be adversely affected by having its plaintiff-domiciliaries reap a larger recovery than they would have received under its own law. And although one factor in contacts analysis is "the place where the relationship is centered" i. e., the Virgin Islands, where the tickets were bought, such a factor does not, in this kind of relationship, warrant a heavy weight in the scales.

■ On the other hand, as Justice Rigau wrote in *Fornaris, supra,* 93 P.R.R. at 38, Puerto Rico is the place "having greater interest in that [sic] the wrongful act be not committed, or, if committed, that due reparation be made." The commentary accompanying the current version of the Restatement, § 145, repeats these twin factors in stating that "subject only to rare exceptions, the

local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection . . . ." § 145(1), Comment d, at 417. *See also id.,* Comment e, Illustration 2, at 423. We recognize that the Virgin Islands may have some interest in protecting Prinair, which is doing business there, from large recoveries. But Prinair is doing business in Puerto Rico too and in much greater measure; it is also domiciled and managed there. *See State ex rel. Broglin v. Nangle,* 510 S.W.2d 699, 702–04 (Mo.1974); *Griffiths v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 807 (1964); Restatement, § 145, Comment e at 420–21. No basis exists for preferring the Virgin Islands' attenuated protection interest over Puerto Rico's deterrence interest, especially in light of the presumption that Puerto Rico's law should apply both as the locus of the accident, Restatement, §§ 178, 175, and the forum, *Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666, 670 (1974), quoting B. Currie, Selected Essays on Conflicts of Law 183 (1963.)[1] The court did not err in applying the Puerto Rico measure of damages.

■ Defendants next contend that even if plaintiff's pain, suffering and mental anguish are compensable, the jury's award for this element of damages was excessive.[2] While this is pri-

---

**1.** The majority of the panel gives more weight to the heightened interest of Puerto Rico, implicit in its inclusion of mental anguish as an element of damages, in deterring careless conduct on the part of the air-controllers directing and domestic corporations operating airlines in its air space. *See Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d at 672. Judge Campbell places no weight on this factor, liability having been stipulated, and it being, in his view, entirely speculative whether Puerto Rico's higher potential recovery would have a greater deterrence effect than the Virgin Islands' measure of recovery. Judge Campbell would also make it clear that no weight should be given to Puerto Rico merely because its measure of recovery is

more generous, although he concedes that if Puerto Rico's measure was inadequate by the standards of the Virgin Islands that factor, might, in an appropriate case, be taken into account. Nevertheless, since on the facts here neither jurisdiction has a dominant interest in the application of its measure of recovery, and since Puerto Rico has not indicated how it would deal with such a situation, Judge Campbell agrees with the majority on the basis of the Puerto Rico contacts with the accident.

**2.** Prinair also attempts to argue, in a brief received several weeks after the last filing deadline and two months after argument, that plaintiffs failed to establish any economic loss resulting from decedents' death. Though this

marily a matter for the trial court, we are constrained to agree. *See Compania Transatlantica Espanola S. A.* v. *Melendez Torres,* 358 F.2d 209, 214 (1st Cir. 1966). The evidence in this case did not in our view justify the gross deviation between the verdict here and awards in other comparable Puerto Rico cases.[3] Plaintiffs' claims rest primarily on their

allegedly precarious psychological conditions which they attribute to the trauma of the sudden loss of their parents. Dr. Mayoral, their psychiatric expert hired to interview them for the trial, was quite pessimistic about their condition and prognosis,[4] though Mrs. Gjessing, the younger boys' foster-mother, was considerably more sanguine.[5] Moreover, all

brief was denominated a "Reply Brief," it raises an issue not previously addressed by any party. Prinair advances no explanation for the wild untimeliness of this submission; its motion for late filing is denied.

**3.** In *Rios Perez* v. *Water Resources Authority,* 93 P.R.R. 624, 629–30 (1966), the Supreme Court of Puerto Rico, "taking as starting point the date of the accident and considering the picture of dependency by reason of family nexus, or the measure of that imponderable loss of company and mental suffering produced by the death of a relative," reduced compensation to the eight surviving children of drowned parents to amounts varying from $7,500 for moral suffering alone up to $12,000 including economic loss. In *Ortiz* v. *Great Am. Indemnity Co.,* 83 P.R.R. 296 (1961), the court reduced damages for the death of an 18-year old child from $25,000 to the mother, $10,000 to the father and $5,000 to each of four brothers to $20,000 to the mother and $2,000 each to the father and brothers. In *Santa* v. *United States,* 252 F.Supp. 615, 621 (D.P.R.1966), the court awarded $4,000 to a widow who had experienced "great suffering" including the death of her husband in her lap after he was turned away from a hospital. Reasonable compensation for the three children was set at $2,000 each for mental anguish and an additional $1,000 for loss of their father's guidance.

Of course, these awards must be heavily discounted since they are remote in time and may involve many considerations of which we cannot be aware. Nevertheless the contrast with the verdict here is instructive. The jury awarded Gregory, Craig and Eric $270,000, $380,000 and $395,000 respectively "for past, present and future pain, suffering and mental anguish and other moral damages suffered and/or to be suffered . . . proximately resulting from the death of Frank and Helen Kirchoff." Plaintiffs cite no cases on this point; the fact that a settlement in another case arising out of the same crash approached the jury verdict rendered here is of doubtful relevance, especially where we know nothing of the economic circumstances of the decedents there.

**4.** He diagnosed Gregory as "suffering from a severe neurotic depression with obsessive traits and some disintegration of his personali-

ty." The accident was a very severe trauma for him, because he was in the process of resolving conflicts regarding his father, who could not reconcile himself to Gregory's academic difficulties, and his stepmother, whom he idolized, in order to turn his back on his natural mother.

Craig is "suffering from a severe anxiety neurosis." He is very demanding and has a very low capacity to tolerate frustration, which generates hostility in others despite his efforts to relate adequately to them. At the interview he bit his nails, couldn't sit still and had a very low attention span. It hurt him to speak of his parents, about whom his recollections were all positive.

Eric is "suffering from a severe depressive neurosis, but also with alarming symptoms which point to probable eventual disintegration of his personality," a "borderline psychotic." He is unconsciously fearful of becoming too close to others because of his past loss, hence he is very submissive and his relations with others are "superficially lacking in affection and in an automatic manner."

**5.** She testified that Greg had had a very warm relationship with his stepmother and an ambivalent one with his father, who had been upset at his school difficulties. After the accident he became discouraged and nervous, though he has a deep sense of responsibility for his younger half-brothers. He is presently selling paint at the Kirchoff's old store, and is conscientious and does a good job. He was recently appointed administrator of the Kirchoff's estate. He has lots of friends and a sharp, very quick sense of humor.

Craig was affected most adversely by the accident. He "went into sort of shock" when he learned of the crash. He has become nervous, depressed, easily bored, and is angry, upset and hurt at his loss. He is immature, sensitive to criticism, cries easily and has no self-esteem. He hasn't failed any grades at school, is fairly well-controlled, has a weekend job, and works like "a little beaver" at things he enjoys. He has real mechanical abilities and enjoys swimming, sailing and tennis.

Eric had a difficult time adjusting to the loss but is now coming along well. He thinks of himself as part of the Gjessing's family and no longer talks about his parents' return. He is

three suffer in varying degrees from dyslexia, and inherited neurological disorder which impairs the learning abilities of average and bright persons and often occasions secondary emotional disorders stemming from frustration at learning difficulties. Testimony and pre-accident reports conclusively establish that the children exhibited many of their present emotional problems before their parents' death [6] and even Dr. Mayoral acknowledged this though he was firm in his opinion that the accident was the major causative factor. Finally, Dr. Mayoral testified that with intensive psychiatric care plaintiffs had a fair chance of recovery, and the jury apparently included amounts for such care in its computation of economic loss.[7]

■ We accord the jury and judge broad discretion in setting and reviewing damage awards, *Boston & M. R. R.* v. *Talbert,* 360 F.2d 286, 291 (1st Cir. 1966); *Compania Transatlantica Espanola S. A.* v. *Melendez Torres, supra,* and recognize that recovery for grief poses special problems for a reviewing court. *See D'Ambra* v. *United States,* 481 F.2d 14, 20 (1st Cir. 1973), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1974). Nevertheless, a careful review of the transcript of the 22-day trial convinces us that the jury award for mental anguish was unconscionable, *Boston & M. R. R.* v. *Talbert, supra,* a product of compassion in a case where the defendants were a large corporation and the federal

government, and the district court manifestly abused its discretion in allowing it to stand, *Ganapolsky* v. *Park Gardens Dev. Corp.,* 439 F.2d 844, 846 (1st Cir. 1971). Hence we remand for a new trial.

■ Plaintiffs' cross-appeal is without merit. Assuming an appeal lies from a consented-to remittitur, *see* 9 J. Moore, Federal Practice § 203.06, at 721–22 (1973); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2815, at 105–06 (1973), the district court did not abuse its discretion in ordering a remittitur where there was no direct evidence as to decedents' conscious pain and suffering and where any suffering that might have occurred could not have lasted more than seconds anyway. *See Compania Transatlantica Espanola S.A.* v. *Melendez Torres, supra,* 358 F.2d at 214. Nor have plaintiffs a valid claim of obstinacy. *Marston* v. *American Employers Insurance Co.,* 439 F.2d 1035, 1042 (1st Cir. 1971); *Banco-Popular de Puerto Rico* v. *Deliz,* 407 F.2d 1388, 1390 (1st Cir. 1969).

■ A question arises as to the effect to be given the parties' stipulation that "upon rendition of a verdict for plaintiffs . . . a joint judgment will be entered against Great American Insurance Company and the United States. . . . " All the provisions of a statute waiving sovereign immunity are jurisdictional, *The Harrisburg,* 119 U.S. 199, 214, 7 S.Ct. 140, 30 L.Ed. 358

"performing very nicely." He can be stubborn, but is very cooperative and cheery, seems to be relaxed and fairly well-adjusted. A pre-accident speech impediment has been cured. Post-accident school and camp reports in the record point to increased independence and self-confidence. They describe him as a "delightful boy" whose attitude and cooperation are "excellent."

Both younger children are attending school and in very good health. They call the Gjessings "Mom" and "Dad" and express love and affection towards them. They receive special tutoring help but have undergone no psychiatric treatment since the accident. All three brothers are close to each other.

6. Gregory testified that he had been "immature" and had "had a lot of problems" before

the Kirchoffs' deaths, and Dr. Mayoral agreed that "most" of his symptoms pre-dated the accident and that his parents' divorce had been traumatic for him. A learning consultant's evaluation made before the accident had shown Craig to be immature, a secondary reaction to his dyslexia problems, and to have feelings of frustration and inferiority and a poor self-image. He had a short attention span. In a similar report Eric was described as markedly immature with a potential for developing real emotional problems.

7. The amount awarded for economic loss exactly equals defendants' computation of income loss plus plaintiffs' computation of psychiatric fees.

(1886), and the government cannot by consent confer jurisdiction on the court to treat a jury verdict against the United States as other than advisory, 28 U.S.C. § 2402 (1970), Fed.R.Civ.P. 39(c), or enter judgment against it at a rate of interest exceeding 4%, 28 U.S.C. § 2411(b), *United States* v. *Culp,* 346 F.2d 35 (5th Cir. 1965). If the judgment were to be joint as per the stipulation, it would have to conform to the statutory restrictions on actions and judgments against the United States. Since neither side, evidently, so understood the sense of this clause of the stipulation we conclude that it is of no effect. On remand, absent further agreement, the court may enter judgment at 6% on the new jury verdict against Prinair; the verdict will be advisory only as to the United States, and the court will make its own findings as to all elements of damages in the claim against it and enter judgment thereon at the rate of 4%.

Reversed and remanded for proceedings consistent with this opinion.