Robert LaFOREST et al.,
Plaintiffs-Appellees,

v.

**AUTORIDAD de LAS FUENTES
FLUVIALES de PUERTO RICO,**
Defendant-Appellant.

No. 75–1195.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1976.

Decided May 25, 1976.

As Modified June 14, 1976.

Luis A. Lugo, Jr., Hato Rey, P. R., for defendant-appellant.

Harvey B. Nachman, San Juan, P. R., with whom Nachman, Feldstein & Gelpi, San Juan, P. R., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, MATTHES **, and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In the evening of March 11, 1972, while bike riding with friends in Torrimar, Guaynabo, Puerto Rico, eleven year old Robert LaForest, Jr., was electrocuted when proceeding through a puddle in the planting strip near a road. The cause of the tragedy was a break in an underground high voltage wire belonging to defendant, a publicly-owned utility. The fractured ends of the wire, lying near the earth's surface, had electrified the puddle. Instant or near instant death resulted.

The deceased and his family, though residing in Puerto Rico, were citizens of Haiti; and the present action seeking damages for his death was brought in the dis-

** Senior Judge of the Eighth Circuit sitting by designation.

trict court for the District of Puerto Rico under the jurisdictional provisions of 28 U.S.C. § 1332. Plaintiffs are the deceased's father, mother and siblings. Under section 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141, recovery may be had for damage suffered through another's fault or negligence.[1] Major elements of the damages claimed by each plaintiff were his or her own mental suffering, anguish and loss of companionship occasioned by the decedent's death, elements for which parents, brothers and sisters may be individually compensated in such cases under the law of Puerto Rico. *See Commercial Union Insurance Co. v. Gonzalez Rivera,* 358 F.2d 480 (1st Cir. 1966). The jury found for plaintiffs in the total sum of $210,000: $75,000 for each parent, and $15,000 for each of the four siblings. This appeal was taken after the court denied defendant's motion for a new trial.

■ Defendant argues first that there was insufficient evidence for the jury to find that Robert LaForest, Jr., was killed as the result of defendant's negligence. The short answer to this contention is that it is foreclosed, since defendant did not move for a directed verdict and a federal appellate court may not reverse for insufficiency of the evidence in the absence of an unwaived motion for directed verdict. *Home Ins. Co. of New York v. Davila,* 212 F.2d 731, 733 (1st Cir. 1954); 5A Moore, Federal Practice ¶ 50.05[1], at 2343; Wright & Miller, Fed. Practice & Procedure, ¶ 7536. It is true that defendant raised the question of insufficiency in his motion for new trial; but even assuming, without deciding, that there could ever be extraordinary circumstances where a claim of insufficiency of the evidence could rest upon a motion for new trial, *cf. Oliveras v. American Export Isbrandtsen Lines, Inc.,* 431 F.2d 814, 817 (2d Cir. 1970), no such situation remotely exists here. Indeed, as hereinafter described, the record amply supports the verdict.

After a concrete lighting pole was damaged late in 1968, defendant's servants made repairs simply by splicing the high voltage wire servicing the pole, tucking it down into the butt of the pole, and burying the butt and wire after severing and carrying away the remainder of the pole. No replacement pole was installed. Several years later, shortly before Robert LaForest's death, an allegedly unauthorized person operating a scraper apparently snagged the concrete stump with sufficient force to pull it from the ground, breaking the attached underground wire. As this occurred in the daytime, the power was off; but in the evening, when the current came on, the broken wires, forming part of a series system, were electrified and energized the puddle, creating the lethal trap.

■ Defendant argues that its mode of repairing the damaged pole in 1968 was not negligent. However, plaintiffs' expert testified that leaving the broken stump, concealing a spliced 2000 volt line, a foot or less from the earth's surface in this location created an unreasonable hazard. While defendant's expert took a contrary view, plaintiffs' expert's opinions coupled with the evidence as a whole provided sufficient basis for a finding of negligence. The jury could determine that the stump and wire were something of a booby trap. One accidentally uncovering the broken stump would not know that the live wire was therein; moreover the location was not only well travelled but often wet, presenting a risk that the soil covering would, in time, erode, and enhancing the risk of accidental electrical discharge. Electrical utility companies are not insurers, but they are charged with knowledge of the inherently dangerous character of their enterprise, and are under a corresponding duty to exercise the utmost care and vigilance in constructing and maintaining high voltage installations. *Widow of Davila v. Water Resources Authority,* 90 P.R.R. 316 (1964); *Ramos v.*

---

1. We said in *Compania Transatlantica Espanola, S. A. v. Melendez Torres,* 358 F.2d 209, 212–13 (1st Cir. 1966), that this statute was "the primary source of liability for wrongful death under Puerto Rican law".

*Water Resources Authority,* 86 P.R.R. 572 (1962).

■ Defendant further argues that La-Forest's death was solely caused by the intervening action of the person operating the scraper without its permission. But it has been held by the Supreme Judicial Court of Puerto Rico as by other courts that,

"A defendant ordinarily will not be relieved of liability by an intervening cause which could reasonably have been foreseen, nor by one which is a normal incident of the risk created."

*Gines Melendez v. Aqueduct and Sewer Authority,* 86 P.R.R. 490, 495 (1962). The activities of the scraper, whether or not authorized, were foreseeable in the sense that they belonged to a class of activity that, prudently, should have been anticipated. The buried stump was near streets, a sidewalk and a shopping center. It was not unpredictable that someone might, in the future, excavate or grade in the area without defendant's prior knowledge or permission. Here the jury could have found that the scraper's activity was limited to surface clearance, and that the stump was very near the surface. It was also foreseeable that one so excavating or grading might uncover or snag the abandoned stump and, without reason to know of the hazard, either remove it, thus breaking the wires, or otherwise disturb the installation in such a way as to create a danger.

■ Defendant also contends that the court abused its discretion in not granting a new trial with respect to damages, the jury's award being allegedly excessive. Defendant's motion for new trial of course appropriately preserves the issue of excessive damages. *See Braunstein v. Massachusetts Bank & Trust Co.,* 443 F.2d 1281, 1285 (1st Cir. 1971). While we are not furnished with the charge and so do not know precisely the theory of damages submitted, we infer that a substantial part of each award reflects the civil law conception of recovery for mental and moral suffering, as well as, perhaps, for loss of companionship, a theory which this circuit recently dealt with in

*D'Ambra v. United States,* 481 F.2d 14 (1st Cir.), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973). There was evidence that deceased was an intelligent, affectionate and well motivated child; that family ties were strong; and that had he followed the lead of his brothers and sisters, he might have gone on to college and a successful career.

Defendant's principal argument is that the amounts are much higher than any thus far sustained by the Supreme Judicial Court of Puerto Rico in recompense for anguish and loss of companionship. In this it makes a persuasive case. *Cf. Bonn v. Puerto Rico International Airlines, Inc.,* 518 F.2d 89, 93 & n. 3 (1st Cir. 1975); *Gabriel Gonzalez Ocasio v. Municipality of Loiza,* . . . . . P.R.R. . . . . . . (1975); *Sanchez Gonzalez v. Liberty Mutual Insurance Co.,* 100 P.R.R. . . . . . . (1971). Awards in excess of $25,000 for this type of damage are apparently a rarity in the Puerto Rico courts, particularly after the judgments have undergone review by the highest court; but they are not altogether unknown. *See Cruz Resto v. Holiday Inn Corp.,* 96 P.R.R. 136 (1968) ($75,000 award for both parents of a five-year old girl drowned in a swimming pool). Defendant argues that we should actively review the present verdict in light of local precedent, arriving at much lower figures than the jury awarded and the trial judge, in denying the motion for new trial, allowed. Such an approach would be analogous to that of the highest court of the Commonwealth which in reviewing the awards of lower courts (rendered by judges, not juries) applies a more exacting standard of review than is employed by common law appellate courts in considering jury verdicts.

■ The difficulty with such an approach is that civil plaintiffs in the federal district court of Puerto Rico are entitled under the seventh amendment to a trial by jury. Fed.R.Civ.P. 1, and 38; 28 U.S.C. §§ 119 and 451. *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). A federal jury which of course in this instance

consisted of residents of Puerto Rico, is not bound in making its determination by the amount that the Commonwealth courts have awarded or approved. *Hart v. Forchelli*, 445 F.2d 1018, 1019 (2d Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971), *citing Brown v. Louisiana & Arkansas Ry. Co.*, 429 F.2d 1265 (5th Cir. 1970). And the seventh amendment not only assures plaintiffs in the present case a jury trial but also that the jury's factual determinations will be reexamined only "according to the rules of the common law." U.S.Const., amend. VII; *Parsons v. Bedford*, 28 U.S. 433 (3 Pet.) 433, 7 L.Ed. 732 (1830). This means that, despite the possibility of disparate awards in the federal and commonwealth courts, *cf. Byrd, supra,* 356 U.S. at 536–39, 78 S.Ct. at 900–901, 2 L.Ed.2d at 961–962, we must adhere to the rule of review commonly applied by federal appellate courts with respect to civil jury awards, which is that the jury's otherwise supportable verdict stands unless "grossly excessive" or "shocking to the conscience". That was the standard we applied in *Bonn, supra,* at 94 ("unconscionable"), although it is true that we mentioned as "instructive" in this regard the "gross deviation" between the verdict and Puerto Rico awards. *Id.* at 93 n. 3.[2] We accordingly must reject defendant's urging that we review the verdict strictly in terms of the amounts heretofore approved in other cases by the Supreme Judicial Court of Puerto Rico. The standard of review of federal jury verdicts is no different in Puerto Rico than elsewhere. *Cf. Parsons v. Bedford, supra.*

Using our usual standard of review, we are unable to say, under the circumstances presented and especially given the close knit family involved, that the jury awards were "grossly excessive" or "shocking to the conscience". The amounts are high, one might say extremely high, but there are six plaintiffs and we cannot say that the awards involve the sort of irration-

ality presented by the much higher awards in *Bonn*.

This is not to say, as defendant suggests, that Puerto Rico is defenseless. Its judiciary or legislature may determine that for economic or other reasons there must be stricter legal limitations imposed upon recoveries for death cases than now prevail. We would be mindful of definite legal limitations, expressed as such, by the high court of Puerto Rico with respect to death recoveries, as also any specific limitations imposed by the legislature of Puerto Rico.

*Affirmed.*

---

**2.** Our decision in *Bonn* and the problems associated therewith are discussed at length in *The United States Court of Appeals for the First Circuit 1974–1975 Term*, 10 Suffolk L.Rev. 218–

39 (1976). *See also* Comment, *Remittitur Review: Constitutionality and Efficiency in Liquidated and Unliquidated Damage Cases,* 43 U.Chi.L.Rev. 376 (1976).