Joseph A. **D'AMBRA** et al.,
Plaintiffs, Appellees,

v.

**UNITED STATES of America,**
Defendant, Appellant.

No. 72–1205.

United States Court of Appeals,
First Circuit.

Argued Oct. 5, 1972 and Jan. 3, 1973.

Decided June 7, 1973.

Joseph C. Johnston, Jr., Asst. U. S. Atty., with whom Lincoln C. Almond, U. S. Atty., was on briefs, for defendant, appellant.

Leonard Decof, Providence, R. I., with whom Tobin, Decof, LeRoy & Silverstein, Girard R. Visconti, and Max Wistow, Providence, R. I., were on briefs, for plaintiffs, appellees.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Judge.

The United States appealed from a decision of the district court for Rhode Island awarding plaintiffs $118,800. in an action under the Federal Tort Claims Act[1] (FTCA) for the death of their four-year-old son, run over and instantly killed by a mail truck in June 1970. On conflicting evidence the government disputed its liability and challenged the application of the Rhode Island Wrongful Death Act, amended since the accident, as the measure of damages. After the original hearing we concluded that we were satisfied that the finding of liability was supported and that, as the court had ruled, application of the latest amendment was not an instance of impermissible retroactivity, Freeborn v. Smith, 1864, 69 U.S. (2 Wall.) 160, 174–175, 17 L.Ed. 922; Langdeau v. Narragansett Ins. Co., 1963, 96 R.I. 276, 191 A.2d 28, 30–31. We were particu-

---

1. 28 U.S.C. § 1346(b); 28 U.S.C. § 2674.

**16**

larly concerned, however, whether the application of the Rhode Island Act in this case violated the immunity of the United States from liability for punitive damages which was preserved by 28 U. S.C. § 2674, and on this issue set the case down for reargument.

■ Our question, prompted by its history and consideration of the Act as a whole, is whether Congress intended in a wrongful death case to accept liability over and above compensating the survivors to the extent of their loss; viz., if a state statute so provided, to pay an additional sum computed on some concept of the ultimate value of the estate, which, demonstrably, the survivors would never have received.

Many state statutes, although they may differ in form as to the method of computation and distribution, are, like Lord Campbell's Act, 9 & 10 Vict., c. 93 (1846), the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., and the Death on the High Seas Act, 46 U.S.C. § 761 et seq., survivors' acts. Others, of which the Rhode Island act is an example, in varying degrees think of the death in terms of an economic loss to the decedent, and distribute the additional sum so computed as, in effect, a windfall to the selected beneficiaries. "Windfall" may be a crude term, but it is illustrated by the fact that the award will go by escheat to the state under the intestacy laws—in North Carolina to the state university, see Warner v. Western N. C. R. R., 1886, 94 N.C. 250—if there are no surviving next of kin.[2] Following the statute, R.I.G.L. § 10–7–1.1, the court, on the basis of tables and expert testimony, determined the deceased child's gross earnings over his lifetime, deducted estimated personal expenses, and discounted the total to a present figure. The deductible expenses, in accordance with the Rhode Island Act, did not include expenses the child would have incurred on account of his anticipated dependents. This was explained by plaintiffs during oral argument on the basis that had decedent survived, his dependents would, in fact, have received these payments, so that they should not be deducted. But quite apart from the fact that the present plaintiffs, his parents, would not have been the hypothesized wife and children to receive such earnings,[3] this analysis points up the fact that what plaintiffs call an estate statute does not substitute, for the benefits provided by survivors' statutes, the value of the decedent's estate which might be expected to be accumulated, but results in the receipt of both.[4]

The Rhode Island legislature is free to be generous if it wishes at the expense of individuals negligent enough to cause a death in that state, for in terrorem or other purposes. Our question is whether Congress, in relaxing governmental immunity, accepted such liability.

The FTCA had two parents. The first was the growing conscience of Congress respecting the defense of sovereign immunity. The second was dissat-

---

2. Plaintiffs argue in their brief that this is not novel, and that in feudal times this is precisely what happened, except that the crown was the inevitable beneficiary whether there were next of kin or not. See Smedley, Wrongful Death—Bases of the Common Law Rule, 13 Vand.L.Rev. 605 (1960). If this is relevant, we would answer that it was perhaps because of this that payment for wrongful death became unpopular and ceased, and, when revived by Lord Campbell's Act was in the form of recompensing the actual loss of the survivors and natural beneficiaries.

3. The court did not determine the life expectancy of the parents, as it would in a survivors' statute, see, e. g., United States v. Boykin, 5 Cir., 1931, 49 F.2d 762 (Jones Act, incorporating FELA) ; cf. Van Beeck v. Sabine Towing Co., 1937, 300 U.S. 342, 347, 57 S.Ct. 452, 81 L.Ed. 685 ; but manifestly it was less than the life, perhaps even of the projected earning period, of the deceased child.

4. That it is euphemistic to call it an estate statute at all is revealed by the fact that the award is not subject to the debts of the estate. Thus the survivors, whoever they may happen to be, get the best of both worlds.

isfaction with the private bill remedy, unfair because of its randomness, and burdensome because of the inappropriateness of the forum. See Report of the Joint Committee on the Organization of Congress to accompany S. 2177, Sen. Rep.No.1400, 79th Cong., 2d Sess. See generally Gottlieb, The Federal Tort Claims Act—A Statutory Interpretation, 35 Geo.L.J. 1 (1946); Note, The Federal Tort Claims Act, 56 Yale L.J. 534 (1947). The solution was a statute which transferred to the courts the duty of determining whether the negligent act was one for which Congress was willing to recompense, and, if so, to determine the damages, again to the extent that Congress was willing to pay. As to acts, there were many exceptions. *See*, in general, 28 U.S.C. § 2680. These included governmental-type acts, even though there was negligence, 28 U.S.C. § 2680(a); Coastwise Packet Co. v. United States, 1 Cir., 1968, 398 F.2d 77, cert. denied, 393 U.S. 937, 89 S.Ct. 300, 21 L. Ed.2d 274; and, conversely, any act where there was no negligence, even though an individual would have been liable without fault, Laird v. Nelms, 1972, 406 U.S. 797, 92 S.Ct. 1899, 32 L. Ed.2d 499. As to damages, the plaintiff was not to have the right to a trial by jury, 28 U.S.C. § 2402, or to pre-judgment interest or a punitive award. 28 U.S.C. § 2674.[5]

That Congress was concerned with compensating for the negligence of governmental employees is demonstrated by the case of wrongful death in the two states where civil recovery is measured exclusively by the degree of fault, and hence clearly punitive. In such event Congress undertook to compensate the survivors for their pecuniary loss [6] even though the amount grossly exceeds the recovery permitted by the state against individuals. Massachusetts Bonding & Ins. Co. v. United States, 1956, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189. Did Congress, conversely, intend to do more than compensate the survivors when the state statute so required?

Although by no means conclusive, we look to the Committee Report, and other references, cited in *Massachusetts Bonding*, 352 U.S. at 131, 77 S.Ct. at 188, making provision for the two states having only punitive statutes,

> "Since in those two states compensatory damages are not allowed, all that is required is to amend the Federal Tort Claims Act to say that in such states compensatory damages shall be allowed . . . It is believed that that suggestion would eliminate the discrepancy and would make the settlement of claims in those two states to be exactly in accord with the general rules followed in the other 46 states . . ."

Concededly "exactly" cannot mean "exact," since some states do allow punitive damages, excluded by the previous paragraph of the Act.

With this background we turn to consider what was meant by the term "punitive" in the principal section of the Act, ante n. 5. Punitive damages, whether viewed as "smart money" or as a deterrent, is that part of the award that is not compensatory; the terms are mutually exclusive. See McCormick, Damages § 77 (1935). Thus the Georgia court in Atlantic, Valdosta & W. Ry. Co. v. McDilda, 1906, 125 Ga. 468, 54 S. E. 140, speaking directly to the point, said that its wrongful death statute "is penal in that the measure of the recovery is the full value of the life of the deceased, irrespective of its real value to

---

5. The first paragraph of § 2674 reads: "The United States shall be liable, respecting the provision of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. . . ."

6. The second paragraph of § 2674, applicable where a state statute provided *only* punitive damages, specified the federal measure of recovery as "[a]ctual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought."

**18**

the person in whom the cause of action is vested." The court went on to hold that the statute was also civil, since this figure included fair compensation to the survivor, and held that the civil, rather than the shorter penal statute of limitations governed. Following this appraisal, the court in Hartz v. United States, 5 Cir., 1969, 415 F.2d 259, refused to apply the Georgia statute in an FTCA case.

■ Plaintiffs make a number of counter arguments. Their attempted distinction that the state court had declared its statute partially penal cannot be sound. The statute must be judged not by its language, nor the state court's characterization, but by its consequences. The application of the FTCA is a federal question.[7] Laird v. Helms, ante; Richards v. United States, 1962, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492. Secondly, plaintiffs criticize the *Hartz* court for failure to realize that under Georgia law a surviving widow is entitled to take in trust for the children. If the court did this, it is of no present relevance. Finally, plaintiffs state that the Rhode Island deductions are larger, and more rational than is the Georgia computation. That is true. It does not, however, change the principle.

Plaintiffs point out that a number of state statutes are, to a considerable degree, similar to the Rhode Island Act, and that no previous court, other then *Hartz*, has raised this question. It is true that a few courts have applied these statutes, although without apparent consideration, in cases where the decedent was an unmarried minor.[8] However, in the vast majority of cases, where the decedent had a wife and children the difference, in dollars, to the beneficiaries of so-called estate statutes and straight survivor statutes might not loom so large as to be conspicuous.

Even in the case of an unmarried minor, a survivor statute has been held to allow the parents to recover more than what the decedent would have been legally obliged to give them. *See, e. g.*, Louisville & N. R. Co. v. Thomas' Adm'r, 1916, 170 Ky. 145, 185 S.W. 840 (FELA). It must be however, that it is difficult, without engaging in pure speculation, to make an appreciable finding in this respect when the child is so young that no pattern of filial generosity has been established. And it also must be borne in mind that even generous children, after attaining adulthood, may marry and incur substantial obligations that must take precedence. In the present case, even taking the most liberal look at the practicabilities of life and common experience, it is inconceivable that compensatory damages to the parents of a four-year-old child might approach $118,000.

In remanding for recompensation it is desirable that we express some guidance. Compensatory damages in terms of monetary loss are computable with a reasonable degree of accuracy in the case of an individual who has lived long enough to present a pattern of earnings, *See, e. g.*, Stanley v. United States, D.Me., 1972, 347 F.Supp. 1088, or at least long enough to show the characteristics from which his earnings may be anticipated. Williams v. United States, 1 Cir., 1970, 435 F.2d 804. A small child, however, presents a special problem—absent some extraordinary demonstrations there is nothing individual to go on. In the absence of evidence, how does one compute earnings, or what part of those earnings might be thought to accrue to parents? A further difficulty arises in such cases from the fact that under contemporary conditions the expenses of rearing a child may be expected to exceed any earnings during the period of minority

7. The only significance we attach to the circumstance that the Georgia court described its statute as partially penal is that state courts do not normally have occasion to consider the distinction, which,

in turn, might result in the federal court not being alerted to the issue.

8. *See, e. g.*, United States v. Brooks, 4 Cir., 1949, 176 F.2d 482; Cronenberg v. United States, E.D.N.C., 1954, 123 F.Supp. 693.

when they would legally belong to the parent. Yet it would seem a crass position for the government to take that by killing the child it had conferred an off-setting financial benefit upon the parents.

Various solutions have been suggested for this special type of case where no affirmative evidence exists to permit computation of monetary loss. In many, perhaps most, cases, courts or juries make more than nominal awards even though "the cost of rearing the child will far exceed any conceivable pecuniary benefits that might ever be optimistically expected of him; and damages honestly calculated on this basis could never be anything but a minus quantity." Prosser, The Law of Torts, 4th ed., § 1257 pp. 908–909. In Hoyt v. United States, 5th Cir., 1961, 286 F.2d 356, 361–362, the court resorted to the expedient of refusing to deduct from the anticipated contributions to the parents the costs of upbringing so as to enable the parents to obtain some recovery.[9] The majority of this court, facing a statutory void resulting from our holding the Rhode Island statute inapplicable as being partly punitive, prefers to fill it by a judge-made rule, hereinafter explained. The court is not altogether happy with its solution, but chooses it as the most reasonable of the available alternatives.[10]

This court, having declared the Rhode Island statute inapplicable to this tort claims suit against the government, must choose one of three courses for the district court to follow on remand. Any one of these is in a sense legislation to fill a void. The first is to leave the district court to the task of strictly applying a pecuniary benefits-less-cost analysis—which would, if rigorously applied to the death of a very young child, yield a zero result. This outcome effectively nullifies not only the Rhode Island statute but also the federal legislation, which aimed only to shield the federal government from punitive recoveries, not from any recovery where negligence results in the death of an infant. The second course is to allow the district court, by blinking at costs of uprearing and speculating on earnings and contributions decades hence, to come up with a recovery satisfying an unarticulated sense of justice while paying lip service to the old common law calculus. This would be, in our view legislation thinly concealed under the guise of traditionalism and internally inconsistent as well. The final course, which we prefer, is to set a standard which will both respond to the reality and contain such limitations as we are able to devise, recognizing that the best solution can be provided only by the Congress with the more precise tools at its command.[11]

---

9. This expedient is contrary to the traditional and strictly logical analysis employed elsewhere. *See, e. g.,* Dugas v. National Aircraft Corp., 3d Cir., 1971, 438 F.2d 1386, 1396 n. 24.

10. The designated writer would prefer simply to play down strictures against speculative damages and permit the court to draw on its general knowledge and on such statistics as may be available as to normal expectancy. It is thus appropriate to say that the balance of the opinion, except the last paragraph, was primarily written by Chief Judge Coffin—with contributions from the rest of the panel—but it is equally fair to say that if a special rule is to be applied, this one seems the best to all of us, the majority of the panel having somewhat allayed the writer's fears by agreeing that their pro-

posed rule is, until hopefully Congress gives further consideration, not an attempt to indicate new principles applicable to other situations.

11. In an attempt to fill the statutory void we are aided by analogy to Moragne v. States Marine Lines, 1970, 398 U.S. 375, 408, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339, where, in commenting upon allowable recoveries under the newly-recognized wrongful death cause of action in admiralty, the Supreme Court said that as to "particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act [not helpful here, for the reasons stated post] and the numerous state wrongful-death acts have been implemented with success for decades." While we recognize that

■■ We start with the proposition that while the measure of recovery must be compensatory to the supervisors of a deceased child, it need not be only a measure of pecuniary loss.[12] But if the traditional standard of pecuniary loss is not to be followed, how can courts, operating in a legislative vacuum, avoid a standardless, open-ended, unreviewable approach? Even though in fact the grief of parents over the bereavement of their child is most real, this element seems to us to be so limitless, so capable of spurious claims, that it, if recognized, is best left to legislatures, which can impose both floors and ceilings.[13] We make the same observation with reference to the "lost investment" theory.[14]

■ An equally realistic but more limited element of compensation for the loss of a minor child, capable of responsible judicial application, seems to us to lie in the loss of society and companionship of the child. Courts which have refused to award damages for grief and suffering have, sometimes under the same statute, recognized loss of companionship.[15] While conscious grief

---

admiralty may be a unique source of special dispensation, we look upon *Moragne* as not too remote a source of guidance in the situation before us.

12. Were Rhode Island's statute wholly punitive, the second sentence of § 2674, specifying compensation measured by pecuniary loss, would apply. But this provision has been held to apply only to the statutes of Massachusetts and Alabama, linking recovery to degree of culpability. Van Dusen v. Barrack, 1964, 376 U.S. 612, 627 n. 21, 84 S.Ct. 805, 11 L.Ed.2d 945. Were pecuniary loss to be the measure of recovery in all Federal Tort Claims Act cases, Congress could have said so in one sentence.

Additionally, the fact that compensation under the FELA, 45 U.S.C. § 51 et seq., the Jones Act, 46 U.S.C. § 688, and the Death on the High Seas Act, 46 U.S.C. § 761 et seq. is limited to pecuniary loss does not dictate a similar result here. In Michigan Central R.R. v. Vreeland, 1913, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, the Supreme Court noted that the FELA was patterned after Lord Campbell's Act, which, though not containing the word "pecuniary", had been continuously interpreted as providing only for that limited type of compensation. The Jones Act, merely incorporating the FELA, utilizes the same standard. And the Death on the High Seas Act specifically refers to "fair and just compensation for the pecuniary loss." 46 U.S.C. § 762.

13. The dangers of recognizing grief as compensable are stated in Note, The Value of a Child, 1972, 24 S.C.L.Rev. 86, and include the unusually high amounts which juries may award.

14. One of the early attempts to award more than nominal damages, yet still label the recovery as somewhat pecuniary in nature, occurred in Wycko v. Gnodtke, 1960, 361 Mich. 331, 105 N.W.2d 118, where the court adopted the "lost investment" theory, under which expenses incurred in the child's upbringing prior to his death were awarded to the parents. *See also* Comment, A Modern View of Wrongful Death Recoveries: Herein of the Infant and the Aged, 1959, 54 N.W.L. Rev. 254; Note, The Value of a Child, n. 13 *ante*. While this approach has the merit of supplying some degree of measurability and some inherent upper limit, we think it fails to recognize the true loss to the parents as the destruction of the parent-child relationship with its attendant society and companionship *Wycko* has not been followed, to our knowledge, in other jurisdictions as to the "lost investment" theory; in fact, the emphasis in Michigan has been more on the loss of society and companionship, see Smith v. City of Detroit, 1972, 388 Mich. 637, 202 N.W.2d 300, which we adopt herein. Moreover, to the extent that a proper balance might be struck by a minimum recovery (to assure a recovery for the loss of a very young child) supplemented by proof of "lost investment" such a resolution is particularly within the province of the legislature.

15. *E. g.*, Wardlow v. City of Keokuk, Iowa, 1971, 190 N.W.2d 439; Lockhart v. Besel, 1967, 71 Wash.2d 112, 426 P.2d 605; Fuentes v. Tucker, 1947, 31 Cal.2d 1, 187 P.2d 752; Gabriel v. Margah, 1947, 37 Haw. 571. In other states where damages are limited to those "pecuniary" in nature, statutes have been interpreted so as to include loss of society and companionship within that term. *See, e. g.*, Fussner v. Andert, 1962, 261 Minn. 347, 113 N.W.2d 355; Hall v. Gillins, 1958, 13 Ill.2d 26, 147 N.E.2d 352. But whether by judicial decision or express statutory authority, it seems that a substantial number, if not a majority, of the states

may diminish over time, the loss of a child's presence in the family, particularly during the minority years, is a real one. There is, moreover, a built-in factor which tends to be self limiting. In the case of the death of a very young child, estimates of future earnings and contributions are bound to be most speculative. All that is certain is that a substantial period of companionship during the child's minority has been lost. As the child approaches majority, the likelihood of a substantial further period of intimate association lessens at the same time as it becomes more possible to predict a pattern of earnings and contributions. A court, therefore, would tend to award greater damages for loss of society for the death of a younger child, and less for one nearer his majority. But in the latter case the court would be on surer ground in identifying the extent of pecuniary loss.

█ The difficulty of assessing this element of damages is not intrinsically greater than that of putting a figure on the loss of nurture, intellectual, moral and physical training which a child suffers with the loss of a parent. United States v. Harue Hayashi, 9th Cir., 1960, 282 F.2d 599, 605; Norfolk & Western Ry. v. Holbrook, 1915, 235 U.S. 625, 629, 35 S.Ct. 143, 59 L.Ed. 392. We grant that any such award will seem too high or too low to the respective parties for the very reason that monetary compensation for pain, disability, distress, and other elements of human injury, though properly awardable, St. Louis, Iron Mtn. & Southern Ry. v. Craft, 1915, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160, is inescapably difficult of precise measurement. But not only does the concept of companionship generally carry with it

the prospect of diminution with maturity; it would also, we have confidence, be applied by judges, just because of the large component of inexactitude, with an eye to judicial precedent in similar cases.[16] Finally, recognizing the absence of statutory restraints, we would on review not hesitate, as indeed we do not hesitate in this case, to set aside a verdict which we feel exceeds that which we deem supportable. We are not, in other words, remanding this case with the thought that our proposed rule is a road to reach the present figure.

█ On remand, therefore, the district court will, on the basis of such factors as the remaining period of minority and likely intimate association with the family, had the child lived, the cohesiveness of the family unit, and recoveries realized in similar cases, attempt to measure compensation by the loss of the companionship and society of the infant victim.

We reiterate that our recognition of damages for the loss of companionship and society of a deceased child applies only where, because a state's wrongful death statute is partially punitive, a statutory void is created under the FTCA. While the applicability of our approach is thus limited, we are all in agreement that the FTCA, in the light of the questions raised by this and other cases, needs Congressional attention to establish a clearly defined, and, since it is a federal act recognizing federal policy, possibly a uniform standard or measure of damages. In the present case, the finding of liability is affirmed; the award of damages vacated, and the court instructed to recompute compensatory damages consistently with this opinion.

allow awards for the death of a child based on factors other than the traditional concept of pecuniary loss of the value of services and contemplated contribution. See In re Sincere Navigation Corp., E.D. La., 1971, 329 F.Supp. 652, 656; Graf v. Taggert, 1964, 43 N.J. 303, 204 A.2d 140, 143 n. 1.

16. An example of a court analyzing in a responsible and discriminating manner the loss occasioned by the destruction, through death, of family relationships is found in In re Sincere Navigation Corp., ante, cited with approval in Gaudet v. Sea-Land Services, Inc., 5th Cir., 1972, 463 F.2d 1331, 1333.