480 F.2d 465
 Lonnie Leroy OWENS, Sr., Plaintiff-Appellant,
v.
CHILDRENS MEMORIAL HOSPITAL, OMAHA, NEBRASKA, a corporation,
et al., Defendants-Appellees.
Ida Ruth OWENS, Plaintiff-Appellant,
v.
CHILDRENS MEMORIAL HOSPITAL, OMAHA, NEBRASKA, a corporation,
et al., Defendants-Appellees.
 Nos. 72-1653, 72-1654.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 16, 1973.
Decided June 12, 1973.
 
 James R. Welsh, Omaha, Neb., for appellant.
 Michael F. Kinney, Omaha, Neb., for appellee, Neis.
 David A. Johnson, Omaha, Neb., for appellee, Childrens Hospital.
 John T. Grant, Omaha, Neb., for appellee, Lombardo.
 Before HEANEY, Circuit Judge, BENSON,* Chief District Judge, and WEBSTER,** District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Plaintiffs appeal from the trial court's dismissal of their actions on the grounds of failure to state a claim upon which relief could be granted.[1] Rule 12(b)(6), Federal Rules of Civil Procedure.
 
 
 2
 The facts for purposes of this review are those alleged in the plaintiffs' complaints. On March 2, 1970, the plaintiffs admitted their son to Childrens Memorial Hospital, Omaha, Nebraska. He remained under the care and treatment of the hospital and the defendant doctors until he died on April 2, 1970. The plaintiffs allege that the defendants negligently failed to properly diagnose, treat and care for their son. They allege that they were in close proximity to their son throughout the period of his hospitalization and that they personally witnessed the negligence and malpractice of the defendants, and the physical and mental suffering of their son. They allege that as a direct and proximate result of the defendants' negligence, they suffered and continue to suffer physical and mental anguish, great emotional disturbance, shock and injury to their nervous system.
 
 
 3
 The sole issue is whether, under Nebraska law, a parent can recover damages for the mental distress accompanied by physical injury resulting from witnessing the suffering of his child, which, in turn, was caused by the negligence of the child's physicians and hospital personnel.
 
 
 4
 Nebraska law governs this diversity action. See, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The trial court was of the view that Nebraska statutory law did not permit recovery and concluded, from its review of Nebraska case law, that a common law action for such damages was not permissible.
 
 
 5
 The crucial question is whether the trial court was correct in holding that the Nebraska Supreme Court's decision in Rasmussen v. Benson, 133 Neb. 449, 275 N.W. 674 (1937), rehearing denied, 135 Neb. 232, 280 N.W. 890 (1938), is not controlling here. There, the defendant negligently sold an unlabeled sack of poisoned bran to Rasmussen, a dairy farmer. Rasmussen fed the bran to his milk cows; a number of them died and others became sick. Concerned for the customers to whom he had already delivered the milk which had come from the sick animals and depressed and heartbroken from the loss of his entire dairy business, the farmer suffered a decompensated heart and ultimately died. Before dying, he brought a suit against the defendant for damages, including his pain and suffering. In the action, which continued after his death, the defendant was found to be negligent and Rasmussen's estate was allowed to recover for the physical consequences of his emotional disturbances.
 
 
 6
 The trial court held that Rasmussen was not on point. It agreed that the case stands for the abolishment of the impact doctrine in Nebraska, but argues that the doctrine was abandoned only where the plaintiff was directly imperiled by the defendant's negligent act. The court recognized that a broad reading of Rasmussen would permit recovery here, but stated that the Nebraska Supreme Court had indicated in the opinion that the case was to be read narrowly and confined to its facts.[2] It then distinguished this case from Rasmussen. It reasoned that Rasmussen suffered, not as a result of witnessing negligence to another person, but for the loss of his own dairy business, which represented his total life savings and energy. Moreover, the court noted that Rasmussen has not been cited by the Nebraska courts since being handed down, and suggested from that fact that Rasmussen was an anomaly in Nebraska law.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 The court reasoned that even if one assumes that the plaintiffs could prove that a sufficient "physical injury" has resulted from the emotional disturbance and mental anguish, there was no cognizable cause of action here because the plaintiffs, themselves, had not been the direct objects of the defendants' negligent acts. It further stated that even if the Nebraska Supreme Court were to allow recovery without impact where the plaintiff was a witness to the peril of another, rather than the direct object of the peril, the court would permit recovery only if the plaintiff had been either within the "zone of physical danger" or put in fear for his own safety.
 
 
 10
 While we are not bound by the trial court's view of local law, we must give special weight to it.[3] Larry Luke, et al. v. American Family Mutual Insurance Company, Nos. 71-1348, 71-1374, 476 F.2d 1015, at 1019 (8th Cir., 1972), aff'd on rehearing en banc (1973). In the light of that doctrine, we are constrained to accept the trial court's interpretation of Nebraska law and affirm its decision.
 
 
 11
 The denial of recovery is consistent with the position taken in the Restatement (Second) of Torts, Secs. 313 & 436 (1965), and by the overwhelming majority of the courts in the United States.[4] See, Annot., 29 A.L.R.3d 1337 (1970); see, e.g., Whetham v. Bismarck Hospital, 197 N.W.2d 678 (N.D. 1972); Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969); Waube v. Warrington, 216 Wis. 603, 258 N.W. 497 (1935). In the face of this authority, we are reluctant to say that the Nebraska Supreme Court would extend the liability of doctors and hospitals for malpractice beyond the individual patient involved where: (1) there was no impact, (2) the plaintiff was neither in the "zone of danger" nor feared for his own safety, and (3) the incident was slowly unfolding rather than traumatic. To do so, we believe would result in us creating a public policy for Nebraska which would not be adopted by their own courts. We note that the plaintiffs may not be without an alternative remedy here. The Nebraska Supreme Court has recently ruled that damages for the loss of the society, comfort and companionship of a minor child may be recovered under the Nebraska Wrongful Death Statute. See, Selders, Admr. v. Armentrout, Neb., 207 N.W.2d 686 (1973).
 
 
 12
 Affirmed.
 
 
 
 *
 District of North Dakota, sitting by designation
 
 
 **
 Eastern District of Missouri, sitting by designation
 
 
 [1]
 The published opinion of the trial court may be found at 347 F.Supp. 663 (D. Neb.1972)
 
 
 [2]
 In the second Rasmussen decision, the majority stated:
 "In order that it may not be misunderstood, in this case the deceased was confronted with a series of disturbing facts. * * *
 "This case can be made more difficult and the opinion seem to reach the wrong conclusions by a misconception of the facts in the case. If the facts are different than presented in this case, different reasoning and a different conclusion might be necessary. * * *"
 Rasmussen v. Benson, 135 Neb. 232, 280 N.W. 890, 892-893 (1938).
 These limiting remarks were apparently made in response to a vigorous dissent which had suggested that the decision would permit recovery in situations such as that in the instant case.
 
 
 [3]
 In Larry Luke, et al. v. American Family Mutual Insurance Company, Nos. 71-1348, 71-1374, 476 F.2d 1015, at 1019 n. 6 (8th Cir. 1972), aff'd on rehearing en banc (1973), the Court stated:
 "This circuit has often stated that where the trial judge arrives at a permissible conclusion with respect to the law of his state, such conclusion will be binding on appeal. * * * Homolla v. Gluck, 248 F.2d 731, 733-734 (8 Cir. 1957). Only the Sixth Circuit has recited a similar position. * * * The continued application of such a rule has been soundly criticized. See 1 Barron & Holtzoff, Federal Practice and Procedure Sec. 8, at 42-43 (1960); 1A Moore's Federal Practice Sec. .309 , at 124-125 n. 15 (1971 Supp.); Wright, Law of Federal Courts Sec. 58, at 241 (1970). * * *
 "Other circuits have not 'bound' themselves to the district judge's initial choice of state law. Rather, they tend to accord 'great weight' to the district court's determination of local law unless they believe it to be clearly erroneous. See e. g., Freeman v. Heiman, 426 F.2d 1050, 1053 (10 Cir. 1970); Minnesota Mutual Life Insurance Co. v. Lawson, 377 F.2d 525, 526 (9 Cir. 1967); Lomartira v. American Automobile Insurance Co., 371 F.2d 550, 554 (2 Cir. 1967). We feel future adherence to the principle set forth by the Fifth Circuit more adequately reflects a court of appeals' proper course of review: 'We give great weight to the view of the state law taken by the district judge experienced in the law of that state, although of course the parties are entitled to review by us of the trial court's determination of state law just as they are of any other legal question in a case.' Freeman v. Continental Gin Co., 381 F.2d 459, 466 (5 Cir. 1967). See also Stool v. J. C. Penney Co., 404 F.2d 562, 563 (5 Cir. 1968)." (Emphasis included and citations omitted.)
 
 
 [4]
 In recent years, some jurisdictions have permitted a plaintiff to recover for shock and mental anguish incurred from witnessing injury to a third person where the presence of the plaintiff was foreseeable. See, D'Ambra v. United States, 354 F.Supp. 810 (D.R.I.1973); Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968); see also, Rodrigues v. State, 472 P.2d 509 (Haw. 1970). This view is supported by commentators. See, W. Prosser, The Law of Torts, Sec. 55 (3rd ed. 1964); see also, 18 So.Dak.L.Rev. 251 (1973); Comment, Negligently Inflicted Mental Distress: The Case for an Independent Tort, 59 Geo.L.J. 1237 (1971); 1 UCLA-Alaska L.Rev. 64 (1971); but see, 73 Dick.L. Rev. 350 (1969)