Leroy WHITE and Patricia White

v.

Leopold DIAMOND and University
Nursing Home, Inc.

Civ. No. 73–642–K.

United States District Court,
D. Maryland.

Dec. 30, 1974.

Robert Cadeaux and Edward H. Jasen, Washington, D. C., and William T. Birney, Silver Spring, Md., for plaintiffs.

Phillips L. Goldsborough, III, M. King Hill, Jr., Howard G. Goldberg and Smith, Somerville & Case, Baltimore, Md., for defendant Leopold Diamond.

Albert B. Polovoy and Edwin L. Dworkin, Baltimore, Md., for defendant University Nursing Home, Inc.

FRANK A. KAUFMAN, District Judge.

On October 17, 1968, Lawrence V. White, plaintiffs' minor son, was gravely injured in an automobile accident and was hospitalized. On March 2, 1970, Lawrence was transferred from George Washington University Hospital, where he had been since the date of the accident, to defendant University Nursing Home [UNH], and was placed under the care of defendant Dr. Leopold Diamond. On December 22, 1970, Lawrence White, aged 11, died.

On December 27, 1971, Leroy White, Lawrence's father, a citizen of the District of Columbia, filed suit in the Superior Court of the District of Columbia against Group Health Association, Inc. [GHA], a District of Columbia corporation, alleging negligence and breach of contract by GHA in failing to provide adequate medical care to his son Lawrence and that he suffered damages in the form of his own "grievous mental distress and anxiety, grief, insomnia and loss of weight". The Superior Court granted a directed verdict for defendant at the close of the plaintiff's case on June 11, 1973. Thereafter, on May 14, 1974, the District of Columbia Court of Appeals affirmed that decision in a per curiam decision.[1]

On June 20, 1973, nine days after the decision by the Superior Court, Patricia White, the mother of Lawrence and the wife of Leroy, commenced proceedings in the United States District Court for the District of Columbia, against Dr. Leopold Diamond, one of the defendants in the case at bar, and also against GHA, the defendant in the aforementioned case brought by Leroy White. The complaint brought by Patricia White was similar to the one brought by her husband Leroy in that suit and alleged negligence and breach of contract with respect to the care of Lawrence, and damages suffered by Patricia in the form of "grievous mental distress, anguish, fear, trepidation, anxiety and grief". On November 7, 1973, the United States District Court for the District of Columbia dismissed Mrs. White's complaint as to Dr. Diamond and denied a motion to dismiss as to GHA. On July 1, 1974, Judge John J. Sirica of the United States District Court for the District of Columbia certified the case for trial to the Superior Court of the District of Columbia pursuant to D.C.Code § 11–922. Under that statute the case will proceed as if originally filed in the Superior Court and as if it had not been filed in that federal District Court.

---

1. Judge Dyer Justice Taylor, sitting in that Court, granted a directed verdict "for reasons stated on the record". T. Tr. of June 11, 1973, 259. *Inter alia*, Judge Taylor during the proceeding on that day stated (T. Tr. 258):

   THE COURT: I really feel that here we have to have some evidence that the Plaintiff, Mr. White, knew of the negligence, assuming it was negligence for the purposes of this ruling and thereby a fear of injury to his son from that negligence.

   In its affirmance of the Superior Court decision, the District of Columbia Court of Appeals concluded that GHA had not violated its duty to treat the decedent in accordance with the applicable accepted medical practice standards.

On June 25, 1973, five days after Mrs. White filed her aforesaid suit and fourteen days after the decision in Mr. White's suit, Leroy and Patricia White together instituted a third suit, *i. e.*, this case in this Court, against Dr. Diamond, a Maryland citizen and a defendant in Patricia White's suit, and also against UNH, a Maryland corporation with its principal place of business in Maryland. UNH was not a party to either of the previously mentioned actions. Jurisdiction pursuant to 28 U.S.C. § 1332 exists in this case based upon diversity of citizenship of the parties and plaintiffs' allegations that the matter in controversy exceeds $10,000 exclusive of costs and interest.

In their complaint in this action the plaintiffs allege that GHA, which administered a health benefits program in which Leroy White had been enrolled since 1960, contracted, for the benefit of both of plaintiffs, with defendant UNH and also contracted with defendant Dr. Diamond to provide and supervise medical care for Lawrence White. Plaintiffs allege that each of the defendants breached his respective contract and obligation to GHA and to plaintiffs as third party beneficiaries. Furthermore, plaintiffs claim damages in tort, alleging that each of the defendants negligently failed to provide reasonable nursing and medical care for Lawrence White. As a result of that alleged breach of contract and/or negligence, plaintiffs seek damages in the amount of $2 million for their "grievous mental distress, guilt, anguish, anxiety, fear, trepidation" and "lost value of services which they were entitled to have performed". Motions to dismiss, filed by both defendants, will be considered as motions for summary judgment pursuant to Federal Civil Rules 12(b) and 56 in the light of the undisputed factual information provided to this Court by

counsel, in addition to the statements appearing in the pleadings.

I

■ After defendants in this case filed their motions to dismiss, at a hearing in this Court scheduled to consider such motions, plaintiffs filed a motion for a change of venue to the United States District Court for the District of Columbia. Under 28 U.S.C. § 1404(a), a motion for change of venue may be granted "[f]or the convenience of parties and witnesses, in the interest of justice," and if the transfer is to a district "where it might have been brought." Accordingly, the transferee court may not be one that would not possess *in personam* jurisdiction over the defendants. Hoffman v. Blaski, 363 U.S. 335, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960). In this case, Dr. Diamond maintains a practice in the District of Columbia and is amenable to process there. However, there is serious question as to whether UNH is so amenable. Plaintiffs have advanced two bases for their claim of jurisdiction over UNH: (1) Federal Civil Rule 4(f)'s 100 mile "bulge" provision; and (2) the District of Columbia long arm statute and Federal Civil Rule 4(e). The first contention is without merit. While Rule 4(f) has application in diversity cases to parties brought into a case pursuant to Federal Civil Rules 14 or 19, see Debbis v. Hertz Corp., 269 F.Supp. 671, 684 (D.Md.1967), it is clear that Rule 4(f) has no application in a case such as this one in which the party sought to be served under Rule 4(f)'s 100 mile bulge provision, *i. e.*, UNH, is neither a Rule 14 nor a Rule 19 party. Plaintiffs' assertion, however, that UNH is subject to the long arm jurisdictional provisions of D.C.Code § 13–423 presents a most serious issue which could require, before decision, factual determinations and rulings as to the application of one or more provisions of the District of Columbia long arm statute.[2] Since, however, Judge Sirica

2. During a hearing on October 18, 1974, counsel for plaintiffs stated that all of the tortious injuries for which plaintiffs are seek-

ing recovery herein occurred at UNH in Maryland. Therefore, long arm jurisdiction does not exist over UNH by virtue of D.C.

has already certified the case brought by Patricia White to the Superior Court of the District of Columbia for trial in that later Court, this Court is of the opinion that it would not be in the interests of justice, as that phrase is used in 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the District of Columbia, a Court in which no case is currently pending with regard to the subject matter of the case at bar. An additional reason for so concluding is that counsel for Dr. Diamond and for plaintiffs have informed this Court that prior to the certification on July 1, 1974 of the case to the Superior Court of the District of Columbia, Judge Thomas A. Flannery, in the course of a hearing before him on January 8, 1974, after being informed of the pendency in this case of the § 1404(a) transfer motion, indicated that he would prefer that the instant case not be transferred to his Court since issues involving the defendant UNH might require the interpretation of Maryland law which might be better performed by this Court.

For the reasons set forth *supra,* plaintiffs' motion for a change of venue is hereby denied.

## II

Defendants have stated, as affirmative defenses under Federal Civil Rule 8(c), res judicata and collateral estoppel.

Those defenses might require additional factual presentation and determination which perhaps cannot be made in the present summary judgment context of this case. Since, for reasons discussed *infra,* which are unrelated to res judicata or collateral estoppel, this Court is of the opinion that defendants are entitled to the grant of their motions for summary judgment, the issues of res judicata and collateral estoppel will not be further considered herein.

## III

■ In this case, pursuant to the command of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, this Court looks to the law of Maryland for resolution of issues of substance including conflicts of law issues. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). At first glance, there might appear to be a choice of law problem in this case since both the *locus delicti* and *situs contractu* arguably could be in either or both of the State of Maryland or the District of Columbia. However, the parties in this case appear to have stipulated that any relevant contracts are to be governed by Maryland law since they were to be performed in Maryland. Furthermore, at a hearing in this case held on October 18, 1974, plaintiffs' counsel asserted that all of the injuries for which the plaintiff is

Code § 13–423(a)(4) since that section speaks only of "tortious injury in the District of Columbia".

D.C.Code § 13–423(a)(1) refers to "transacting any business in the District of Columbia". The record discloses that the telephone book used in the District of Columbia at the time this action was brought includes an advertisement by UNH. Assuming *arguendo* that UNH was "doing business" in the District of Columbia within the meaning of section 423(a)(1), a further question exists in connection with D.C.Code § 13–423(b) which provides:

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

Section 13–423(b) imposes a limitation upon section 13–423(a)(1). Security Bank, N. A. v. Tauber, 347 F.Supp. 511, 514–15 (D.D.C. 1972), citing and discussing Margoles v. Johns, 333 F.Supp. 942 (D.D.C.1971) affirmed, 483 F.2d 1212 (D.C.Cir. 1973) *. Cf.* Egeria Societa di Navigazione per Azioni v. Orinoco Mining Co., 360 F.Supp. 997 (D. Md.1973). Whether the relationship which section 13–423(b) requires between the claim for relief and the jurisdictional acts could be established in this case poses a difficult issue which this Court need not reach herein in view of this Court's determination that a section 1404(a) transfer is not appropriate even if such transfer to the United States District Court for the District of Columbia is authorized, which would only be the case if the District of Columbia long arm statute provides jurisdiction over UNH.

claiming damages occurred in Maryland. Therefore, it appears that Maryland law should govern with regard to both the tort and contract claims. It should be noted, however, that in any event the substantive law of the District of Columbia would not appear to differ from that of Maryland in any way that would be significant in relation to this case.[3]

## IV

Plaintiffs do not appear to seek recovery for damages suffered by them as a result of their child's death. Nor do plaintiffs seem to allege that either Dr. Diamond or UNH in any way contributed to or hastened the child's death. Originally, plaintiffs did claim, in contract and in tort, for the damages alleged to have been suffered by the lost services of their son in the form of "lost value of services which they were entitled to have performed". However, during the hearing in this case on October 18, 1974, counsel for plaintiffs specifically withdrew that allegation. Thus, as counsel for plaintiffs asserted on October 18, 1974, plaintiffs' sole remaining claim for damages is "grievous mental distress, guilt, anguish, anxiety, fear, trepidation" suffered while their son was in UNH and under the care of Dr. Diamond. Plaintiffs seek those damages pursuant to both tort and contractual theories, alleging that UNH and Dr. Diamond treated their son in a negligent manner and also breached their contractual duty to care properly for their son and contending that their mental distress is a compensable consequence of such negligence and breaches of contract.

Two of the most controversial issues in tort law are involved in plaintiffs' tort claim, namely, the "impact rule" and the "bystander rule". Although sometimes confused, they are separate issues. As to the first, Maryland appears to have adopted an intermediate position between that of those states which allow no recovery at all unless a plaintiff was in fact physically struck by some object and physically injured thereby, and that of those states which allow recovery for purely mental distress without the requirements of any contact or of any physical injury. *See generally,* W. Prosser, Handbook of the Law of Torts § 54, at 327–35 (4th ed. 1971). "It has long been established in this state [i.e., Maryland] that recovery may be had for physical injuries resulting from nervous shock, even though there is no actual physical impact." Resavage v. Davies, 199 Md. 479, 480, 86 A.2d 879, 880 (1952).

In recent years there has been a debate over the issue of whether a bystander parent should be allowed to recover for the negligent infliction of mental harm upon him caused by viewing an injury to his child. *See, e.g.,* D'Ambra v. United States, 354 F.Supp. 810, 815 (D.R.I.), affirmed as to liability, reversed and remanded as to damages, 481 F.2d 14 (1st Cir. 1973). Two of the most respected Courts in the country have reached opposite results. *Compare* Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) (allowing recovery) *with* Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969) (not permitting recovery). Maryland law, however, is seemingly reflected by *Resavage,* in which Judge Henderson, writing for a 3–2 majority, reviewed the earlier Maryland cases and over a vigorous dissent held that a mother could not recover damages for nervous shock and resulting injuries caused by her witnessing her daughters struck and killed by an auto operated by one of the defendants and

---

3. *See* Resavage v. Davies, 199 Md. 479, 86 A.2d 879 (1952), cited and discussed *infra* in the body of this opinion, and Hunt v. Calacino, 114 F.Supp. 254, 255 (D.D.C.1953), in which Judge Keech said: " * * * I do not construe the decision as extending the right of recovery to include disturbance of mental and emotional tranquility caused by acts done to a third person or by accusatory statements with reference to a third person such as those on which the complaint herein is founded." *See also* Brown v. Potomac Electric Power Company, 236 F.Supp. 815, 820 (D.D.C.1964).

owned by the other. In *Resavage*, Judge Henderson (199 Md. at 487, 86 A.2d at 881) specifically "adopt[ed] the view set out in" Restatement of Torts § 312, Comment e (1934):

"e. On the other hand, an act, which is merely negligent as threatening an immediate harm to a third person, is not negligent to another solely because of the possibility that the peril or harm of such a person may indirectly cause fear, grief or similar emotional disturbance to others because of their interest in and affection for the third person and the possibility that they may be in such a physical condition that the emotional disturbance may be physically harmful. This is so irrespective of whether the other witnessed the third person's peril or harm or is informed of it immediately thereafter or at some subsequent period, and irrespective of whether they are or are not members of the same immediate family."

Further, Judge Henderson (199 Md. at 484, 487, 86 A.2d at 881) referred directly to the caveat to the following section, section 313. That caveat states as follows:

*Caveat*: The Institute expresses no opinion as to whether an actor whose conduct is negligent as involving an unreasonable risk of causing bodily harm to a child or spouse is liable for an illness or other bodily harm caused to the parent or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock which is the legal cause of the parent's or spouse's illness or other bodily harm.

Despite that caveat, which is quoted in full (at 484, 86 A.2d 879), the Court in *Resavage* applied section 312.

There has been no Maryland case decided since *Resavage* which vitiates or undercuts the holding of that case. Restatement (Second) of Torts § 313 (1965) adopted the *Resavage* rule:

§ 313. Emotional Distress Unintended

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

Comment d to that section states in part:

Thus, where the actor negligently runs down and kills a child in the street, and its mother, in the immediate vicinity, witnesses the event and suffers severe emotional distress resulting in a heart attack or other bodily harm to her, she cannot recover for such bodily harm unless she was herself in the path of the vehicle, or was in some other manner threatened with bodily harm to herself otherwise than through the emotional distress at the peril to her child.

The Reporter's notes (Restatement (Second) of Torts, Appendix, § 313) cite *Resavage* and state that the position taken in subsection (2) represents acceptance of the "heavy weight of authority, despite the feeling of a number of those present at the Institute meeting, that the situation of a mother who sees her child negligently killed before her eyes is one in which recovery would be justified."

In Owens v. Childrens Memorial Hospital, 480 F.2d 465, 466 (8th Cir. 1973), a mother, whose child died in a hospital,

sued the latter and certain doctors for having "negligently failed to properly diagnose, treat and care for their son." The District Court, noting at 347 F. Supp. 663, 665, 669 (D.Neb.1972) that "[t]he Supreme Court of Nebraska has never been presented with the precise issue now before this Court", "the reluctance of the Nebraska Court to allow recovery in the above-mentioned situations", and the "great weight of American authority" against permitting such recovery, granted the defendant's motion to dismiss. In affirming, the Eighth Circuit accepted the District Court's interpretation of Nebraska law and held (480 F.2d at 467) that the denial of recovery was consistent with the position taken by the Restatement (Second) of Torts and "by the overwhelming majority of the courts in the United States." In so doing, Judge Heaney, *inter alia,* cited and noted Judge Pettine's contrary holding in D'Ambra v. United States, 354 F.Supp. 810 (D.R.I.), affirmed as to liability, reversed and remanded as to damages, 481 F.2d 14 (1st Cir. 1973),[4] in which, confronted in a Federal Tort Claims Act case with a situation factually quite similar to *Resavage,* and after considering the Rhode Island State precedents, Judge Pettine held (354 F. Supp. at 815) that " * * * recovery by a bystander parent for the negligent infliction of mental harm is not foreclosed by Rhode Island law." Judge Pettine noted (at 821) that the law in this field was "evolving" toward the application of broad principles of negligence law and therefore concluded (at 822) that a cause of action had been stated by the plaintiff.

■■ This Court need not decide whether, in the absence of controlling state law, it would follow *Owens* or *D'Ambra.* The precedent of *Resavage* is clear and commanding—Maryland law

does not provide for damages caused by the negligent infliction of mental distress upon a bystander who "is in a place of safety" (199 Md. *supra* at 487, 86 A.2d at 883)[5] even under the most compelling set of facts. Therefore, the plaintiffs cannot recover damages in this case under a tort theory.

**V**

Plaintiffs' theory of contractual recovery lacks merit and may be disposed of more briefly. Plaintiffs never entered into any direct contract with either of the defendants. Plaintiffs allege, however, that as a consequence of the original contract between Leroy White and GHA, GHA entered into an oral contract with UNH and, also, with UNH's employee, Dr. Diamond. Plaintiffs contend that, as third-party beneficiaries to the contracts between GHA and UNH and GHA and Dr. Diamond, they should be allowed to recover damages for the mental distress which they allege was caused by what they contend were breaches of contract by defendants UNH and Dr. Diamond.

■■ "The right of third parties to sue and recover on a contract of which they were intended beneficiaries but to which they were not privy (although they must be privy to the promise) is well recognized in Maryland. We have also adopted the definitions of donee beneficiary, creditor beneficiary and incidental beneficiary contained in Restatement, Contracts § 133, at 151–52 (1932) * * * ." Spates v. Spates, 267 Md. 72, 77, 296 A.2d 581, 584, (1972) (citations and footnotes omitted). *See also* Restatement of Contracts (Second), Tentative Draft No. 4, § 133 (1968). In the instant case plaintiffs claim to be creditor beneficiaries of the contract between GHA and UNH by virtue of the pre-existing obligation of GHA to care for plaintiffs' son. *See*

4. Judge Pettine's determination of liability was affirmed by the First Circuit (481 F.2d at 15). The reversal was grounded on the First Circuit's holding that the damage award was partially punitive and that punitive damages may not be awarded against the United States.

5. *See* Bowman v. Williams, 164 Md. 397, 165 A. 182 (1933), as to a person who is not "in a place of safety" and the discussion in *Resavage* (199 Md. at 481–82, 487, 86 A.2d 879) distinguishing *Bowman.*

874

Restatement, Contracts, § 133(b) (1932). Plaintiffs further allege that at the time the latter contract was entered into, all parties were aware of plaintiffs' particular concern that their son should receive proper medical care and that the provision of that proper medical care was an element of the contract between GHA and UNH. Finally, plaintiffs allege that as intended creditor beneficiaries they may recover for its breach. *See* 4 Corbin on Contracts § 787, at 95–106 (1951). In this case there is no need for this Court to decide whether the plaintiffs were or were not creditor or other third party beneficiaries. To decide that issue might involve further factual development which would preclude the grant of defendants' motions for summary judgment. But even if it be assumed *arguendo* that plaintiffs are third party beneficiaries who might otherwise be entitled to recovery herein, the damages which they seek herein for violation of contract are not normally compensable in contract actions. Restatement of Contracts § 341 (1932) provides:

§ 341. Damages for Mental Suffering.

In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss.

*See also* 5 Corbin on Contracts § 1076, at 425–37 (1951). In the case at bar there is no allegation that the conduct of either defendant was wanton or reckless. Accordingly, plaintiffs cannot recover in this case under the contractual theory they have stated.

For the reasons herinabove stated defendants' motions for summary judgment are hereby granted. It is so ordered.