**William H. BUCKNER, Individually as surviving husband of Carolyn Sue Buckner, Deceased, et al., Plaintiffs,**

v.

**FREIGHTLINER CORPORATION, a Nevada Corporation, and White Motor Corporation, an Ohio Corporation, Defendants.**

No. CIV-75-0121-E.

United States District Court,
W. D. Oklahoma.

Dec. 1, 1975.

William R. Davis, Oklahoma City, Okl., for plaintiff Buckner.

Raymond E. Tompkins and Louis G. Buchanan of Hanson, Peterson & Tompkins, Inc., Oklahoma City, Okl., for plaintiff Co-Administrators.

G. Kent Fleming and Burton J. Johnson of Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

On October 9, 1974, near Seligman, Arizona, plaintiff William H. Buckner was driving a truck in which his wife, also an employee of the carrier, was a passenger. While the truck was in motion, Carolyn Buckner fell out of the right door, struck her head on the pavement, and died shortly thereafter.

This action was filed by Buckner, individually and as surviving husband of the deceased, on his own behalf, on behalf of the estate, and on behalf of his five minor stepchildren. The defendants are the manufacturer and seller of the truck. It is alleged that the right door was defective at the time the truck left their control.

Buckner has since been discharged as the administrator of the estate and the court has allowed the successor co-administrators to appear and represent all claims of any beneficiaries of the estate. Plaintiff Buckner still asserts his claim for alleged personal injury, namely traumatic neurosis, resulting from observing his wife's accident and death.[1]

Defendants move to dismiss plaintiff's claim for personal injury on the ground that no recovery can be had for mental pain and anguish which is not the result of any physical injury.

Plaintiff responds that in a recent opinion of the Oklahoma Court of Appeals, *Bennett v. City National Bank and Trust Company, et al.*, 46 O.B.A.J. 1780 (C.A.Okl.1975), the court recognized that injury to the nervous system, though sustained without physical impact, may be compensable. Plaintiff further argues that recovery for serious injury to his nervous system as a result of the severe emotional distress he experienced

---

[1]. Plaintiff also seeks damages for loss of consortium and recovery for funeral expenses incurred. Defendants suggest that these claims be advanced by the administrators' action.

upon witnessing his wife's death is supported by *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), and its progeny.

*Determination*

Plaintiff's interpretation of *Bennett, supra,* as establishing the abandonment of the "impact rule"[2] in Oklahoma is overinclusive. *Bennett* involved an *intentional* infliction of emotional distress which was furthermore *parasitic* to the tort of invasion of privacy. It offers little guidance therefore in evaluating the extent of the erosion of the impact rule in a case of negligently inflicted mental distress, which infliction is asserted as an independent and distinct claim.[3]

However, it is true that the majority of jurisdictions which have had occasion in recent years to re-examine the impact rule have rejected it.[4] The reasons given are compelling. It is said that an individual's interest in being free from negligently-caused emotional pain is no less an interest than that in being free from intentionally-caused emotional pain, or from inflicted physical pain. Nor is that interest one which the law cannot or should not protect. The argument that the courts will be swamped with such litigation has been met with the response that courts exist to hear cases; bona fide claims should not be sacrificed for the sake of efficient docket control. The argument that abandonment of the rule will encourage fraudulent claims has been met with the response that such an argument presumes the judicial process cannot properly function in any event; furthermore, even granting that fraud is upon rare occasion possible, meritorious claims are not therefor justifiably precluded. In the face of the strength of the arguments advanced and the increasing number of courts advancing them, it is not unreasonable to surmise that a court in a jurisdiction where the impact rule has yet survived would, upon the occasion, reject it.

Abandonment of the impact rule would not mean, however, that plaintiff has stated a claim upon which relief may be granted. There remains the question whether a defendant owes a duty to a bystander to refrain from conduct which causes injury to another, resulting in nervous distress to the bystander plaintiff.

The cases upon which plaintiff relies serve to underline the fact that the issue raised is one of the most complex and problematical that courts grapple with today. The issue, most simply stated, is: Should the law impose such a duty on a defendant and can the duty be defined, and so confined, or will imposition of such a duty herald a return to the feudal notion that one "owes a duty to the whole world to conduct himself without causing injury to his fellows"?[5]

Plaintiff is correct that several courts have recently determined that a defendant does owe a duty to a bystander to refrain from conduct which will result in that bystander suffering emotional pain. *Leong v. Takasaki*, 520 P.2d 758 (Hawaii 1974); *D'Ambra v. United States*, 354 F. Supp. 810 (R.I.1973), affirmed by the Court of Appeals for the First Circuit, 518 F.2d 275 (1975), after certification to the Supreme Court of Rhode Island,

2. Variously called the "impact," or "trauma," or "Spade" rule, from the leading case of *Spade v. Lynn & Boston R.R. Co.*, 168 Mass. 285, 47 N.E. 88 (1897), which held that physical impact was an essential pre-condition to recovery for negligently inflicted neurosis.

3. Plaintiff might have cited *Belt v. St. Louis-San Francisco Ry. Co.*, 195 F.2d 241 (10th Cir. 1952), applying Oklahoma law. *Belt* could be considered as a case dispensing with the impact requirement in an action for negligent infliction of emotional distress. But *Belt* on its facts—shock suffered by decedent when struck by a train was exacerbated when a second train was moved past him—is clearly not the run of the mill "no impact" case.

4. See, e. g., citations in *Rodriques v. State*, 52 Haw. 156, 472 P.2d 509 (1970), and *Hopper v. United States*, 244 F.Supp. 314 (Colo. 1965).

5. *Dillon v. Legg, supra*, 69 Cal.Rptr., at 77, 441 P.2d, at 917.

338 A.2d 524 (1975); *Dillon v. Legg, supra.*

On the other hand, several courts have refused to follow *Dillon's* lead. *Grimsby v. Samson,* 85 Wash.2d 52, 530 P.2d 291 (1975); *Owens v. Childrens Memorial Hospital,* Omaha, Neb., 480 F.2d 465 (8th Cir. 1973); *Whetham v. Bismarck Hospital,* 197 N.W.2d 678 (N.D.1972); [6] *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969).

It is understandable that courts have been led to find, and attempt to define, a duty. It is not to be doubted that a person seeing a negligently driven vehicle crush a loved one would suffer. The *Tobin* holding that such is a risk of living and loving seems harsh.

■■ However, this court need not decide whether the *Tobin* rule or the *Dillon* rule should be followed,[7] for the reason that even if the *Dillon* view were to be adopted, it would not avail this plaintiff.[8]

The bedrock of the definition of the duty imposed is foreseeability. The defendant is not held responsible for every emotional injury which like ripples on a lake emanate from the rock of his negligent act, but rather is held liable only for emotional injury to one whose presence and suffering are reasonably foreseeable. The definition thus has its roots in Cardozo's classic determination: "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. R. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928).

The *Dillon, Leong* and *D'Ambra* courts wrestled with foreseeability in terms of the presence of the bystander plaintiff. Those cases involved young children in the proximity of parents,[9] an association held reasonably to be expected. Implicit in these opinions also is an element which has been identified by another court as "the strength and vitality of the original force which the defendant set in motion." *Hopper, supra,* at 318.[10] In this case, there is neither the element of foreseeability of the presence of a loved one nor the element of a strong and vital original force.

In order to conclude that plaintiff has stated a claim, this court would have to reject not only the *Tobin* view, but even *Dillon,* that is, reject the requirement of foreseeability confining the definition of duty, and hold that by virtue of having committed a negligent act, defend-

6. It could be argued that hospital cases involving incidents "slowly unfolding," rather than traumatic, are distinguishable from *Dillon.* See *Owens, supra.* But, see *Grimsby, supra,*—*Dillon* rejected although facts suggest traumatic occurrence.

7. That is, what rule would be followed assuming the absence of controlling state law.
   The Oklahoma case most nearly on point on the issue involved which this court has discovered is *Van Hoy v. Oklahoma Coca-Cola Bottling Co.,* 205 Okl. 135, 235 P.2d 948 (1951). Plaintiff therein sought to recover damages for the mental anguish he suffered when a co-worker became violently ill after drinking a Coke from a bottle containing a dead mouse, which bottle plaintiff had purchased and given her. The Supreme Court affirmed the trial court's order sustaining defendant's demurrer. The sole reason given was "the general rule that the right to maintain an action may not be predicated upon a mental or emotional disturbance alone." 235 P.2d at 949.
   Thus, by applying the impact rule, the court never reached the issue of the duty owed a by-

stander. Because of the age of the case, and because of the intervening erosion of the impact rule, and because the Supreme Court of Oklahoma is not reluctant to re-evaluate tort concepts in the light of public policy—see, e. g., *Kirkland v. General Motors Corp.,* 521 P.2d 1353 (1974), this court is of the opinion that *Van Hoy* is insufficient authority to warrant summary dismissal of this claim.

8. "We do not hold that the strict application of the general rule against recovery for mental anguish and distress in tort liability cases should not be re-examined. We hold this is not the case for consideration of a change of this long established rule since it would be of no avail to the plaintiffs." *Schurk v. Christensen,* 80 Wash.2d 652, 497 P.2d 937, 940 (1972).

9. In *Leong,* the child was the bystander, witnessing the death of a "parent-figure."

10. "Relationship in time and space to the original negligence should be considered." *Ibid.*

ants are liable for its consequential ripples, however remote, however unforeseeable.

To do so would be to create, under the guise of prediction, a public policy for the state which would not be adopted by its own courts.[11] Accordingly,

It is ordered, that plaintiff's claim for damages for traumatic neurosis be and the same hereby is dismissed.

11. Jurisdiction of this court is predicated upon 28 U.S.C. § 1332, and under the *Erie-Klaxon* rule, the substantive law, including the law of conflict of laws, of the forum state is to be applied. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The accident took place in Arizona. In *Brickner v. Gooden*, 525 P.2d 632 (Okl.1974), the Supreme Court of Oklahoma joined the many jurisdictions which have rejected the "lex loci delicti" rule in its inflexible application. The place where the injury occurred is but one of the factors to be considered in determining what state has the most significant relationship to the occurrence and the parties. Among other important factors is the place where the conduct causing the injury occurred—as yet indeterminable herein. The court has informed itself by studying answers to certain of plaintiff's interrogatories that (assuming the door was defective) the conduct complained of, the door's negligent manufacture and assembly, involved activities in at least three states.

Relevant to another factor for consideration, plaintiff is a citizen of the State of Oklahoma and defendants, both incorporated under the laws of other states, are licensed to do business in Oklahoma.

Oklahoma is arguably the state having the most significant relationship. In any event, the court has concluded that the determination made in this case would not be changed by reference to the law of any other state significantly involved herein.